DECISION
Before this Court is the Appeal of James and Maureen Parise (hereinafter "Plaintiffs") from a September 20, 1994 decision of the New Shoreham Zoning Board of Review (hereinafter "Board") granting a Variance and a Special Use Permit for construction of a single-family house and an Individual Sewage Disposal System ("ISDS") to Karl and Carolyn Wallin (hereinafter the "Wallins") in the Town of New Shoreham. Jurisdiction in this Court is pursuant to G.L. 1956 (1988 Reenactment) § 45-24-20.
Facts/Travel
The property presently at issue, the Wallin's property,[1]
is designated as Plat 9, Lot 124 on the Assessor's Plat Plan for the Town of New Shoreham. A house had previously stood on the property, but was destroyed in the hurricane of 1938. (Transcript of August 22, 1994 Hearing, p. 5). Although a partial foundation from this house still exists, the Wallins did not express an intent to continue use of such. (Id.). Plaintiffs' property abuts the subject land and is designated as Plat 9, Lot 80 on the Assessor's Plat Plan. Both properties front on the Mohegan Trail.
The subject lot has an area of approximately 17,500 square feet. (See Radius Map). It is located in an RA District which requires a 120,000 square feet minimum lot size. (Town of New Shoreham Zoning Ordinance, § 306). However, as the subject lot was created in 1928, it pre-dates any zoning ordinance on Block Island and, as such, is considered a single non-conforming recorded lot under the present law. Accordingly, it is considered buildable regardless of the lot frontage or lot area. (Id.). However, under such ordinance, in the event that an applicant seeks to be excused from maximum lot building coverage or set back requirements, he or she must obtain a dimensional variance. (See Zoning Ordinance, § 311 (E), § 706 (D) and § 706 (E) (2)). A lot of this size requires a maximum of 4% Lot Building Coverage and a 50 foot setback. (See Zoning Ordinance, § 506 (C)). The Wallins proposed a house with a total of 1256 square feet, (See Application for Special Exception, Variance or Appeal, p. 1), and which would come within 25 feet of the Plaintiffs property.[2] (See Decision Letter, p. 2). Accordingly, the Wallins applied for a variance from both the lot coverage and sideyard set back requirements. In addition, because of the size of the subject lot, the applicants were compelled to request relief under 506 (c)(2) for a special use permit to allow an Individual Sewage Disposal System ("ISDS") within one-hundred fifty feet of a fresh water wetland.[3]
The application requesting the Variance and Special Use Permit submitted to the Board was dated June 17, 1994. A hearing was held before the Board on August 22, 1994. At such hearing, the Chairman of the Board, John Spier, recused himself as he was to be the builder on the subject property in the case that the variance and special exception were granted. However, Chairman Spier did speak at one point during the hearing regarding the decks for the house, (See Tr. at 35) called for a vote on the application, (See Tr. at 37), dictated part of the decision, (Tr. at 35-36) and signed the decision. (See Decision Letter at 3). In addition, Karl Wallin testified before the Board regarding the conditions of the property and reasons for the variance and special use permit. (See Tr at. 1-10). He presented favorable advisory opinions from both the Planning Board and the Conservation Commission. (See Tr. at 6). Margaret Comings and James Parise, two owners within a 200' radius of the property both testified against the variance because of the small size of the lot and the fact that it would change the rural landscape. (See Tr. at 11-14). Karl Wallin further testified that he designed the house to be shaped as narrow as possible and as small as possible considering his plans for a family. (See Tr. at 20, 21, and 30). In its decision dated August 22, 1994, the Board granted both the variance and the Special Use Permit in a 5-0 vote based on the following findings of fact:
 A. the lot pre-dates zoning to 1928;
 B. there was a house on the lot from 1929 to 1939;
 C. the foundation still remains and is close to the square footage proposed by the applicants;
 D. a three bedroom ISDS is the smallest ISDS approved by DEM without a variance.
 E. the proposed house and requested relief is reasonably required to enjoy a single family residence on the lot which is a permitted use in this zone;
 F. the applicants have a signed Purchase and Sales agreement for the lot;
 G. the hardship is due to the unique characteristics of the lot and the ISDS cannot be moved any further because of an abutter's well;
 H. the applicant allows 25' on each side of the lot for buffering and emergency access;
 I. the Planning Board Conservation Commission both rendered favorable advisory opinions;
 J. this Zoning Board, the Planning Board and the Conservation Commission recently approved the use of the abutting lot, which is only slightly larger than this lot, for a single family dwelling;
 K. the relief sought by the applicant is due to the unique character of the property;
 L. the relief sought by the applicant is not the result of any prior action of the applicant;
 M. the relief granted is the least relief necessary to remove the applicant's hardship and is reasonably necessary for the full enjoyment of the property;
 N. testimony indicated that the subject wetland is considered insignificant by the DEM and the Town's Conservation Commission, being caused by road drainage;
 O. the applicant has met the Special Use Permit standards set forth in Section 401 of the Town's Zoning Ordinance;
 P. the ISDS design will minimize any problems or hazards which could be associated with excessively permeable soils, high water table, and impervious soils, although there appears to be none of these limiting factors;
 Q. all alternative subsequent locations on site have been explored;
 R. the ISDS, once in use, will not pose a threat to public health and safety if designed, installed and maintained as proposed.
Plaintiffs filed the instant appeal.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69 (D) which provides:
 45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). On review, the Supreme Court examines the record to determine whether "competent evidence" supports the Superior Court judge's decision. R.J.E.P.Associates v. Hellewell, 560 A.2d 353, 354 (R.I. 1989).
Variance
The plaintiffs' first exception is that the Wallins have not met the standard set out in the New Shoreham Zoning Ordinance for a variance. As stated infra, it was necessary for the Wallins to obtain a variance for the maximum lot building coverage and sideyard setback requirements in order to build on the subject lot. See Facts/Travel, p. 2).
In their application, the Wallins were requesting a dimensional or "Viti" variance which has been codified in the New Shoreham Ordinance at § 706. A deviation or "Viti" variance is the proper relief sought from regulations that govern enjoyment of a permitted use, such as restrictions relating to side and rear yard lines, height limitations, and lot size, as opposed to a "true" variance which is the appropriate remedy where the proposed use of the property varies from any of the uses permitted under the statute. See Rozes v. Smith,120 R.I. 515, 519, 388 A.2d 816, 819 (1978); See also Viti v. Zoning Boardof Review, 92 R.I. 59, 64-65, 166 A.2d 211 (1960).[4] Where a dimensional variance is sought, the Board should grant such variance where the following standards are met and entered into the record:
 1. The hardship from which the applicant seeks relief is due to the unique characteristics of the surrounding area;
 2. The hardship sought to be avoided is not the result of any prior action by the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
 3. The granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the Zoning Ordinance or the Comprehensive Plan upon which the Ordinance is based; and
 4. That the variance granted is the least relief necessary to remove the hardship to the applicant.
In addition, the Board must find that:
 2. In granting a Dimensional Variance, that the hardship that will be suffered by the owner of the subject property of the Dimensional Variance if not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of the property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief.
Ordinance at § 706 (D) and (E).
The Zoning Ordinance at 506 (C) requires that the Maximum Lot Building Coverage be 4% and the side-yard setback be 50 feet. At 1256 square feet, the house proposed by the Wallins was to cover 8% of the subject lot and needed 25 foot sideyard setbacks. Accordingly, a dimensional variance was the appropriate remedy.
As required by the Ordinance at 706 (D)(1), the Board found that the hardship was due to the unique characteristic of the lot. (See Decision Letter, Finding of Fact G). The record supports this finding in that such lot is approximately 17,500 square feet and is 109 feet across at its widest point. (Tr. at 3). Next, the Board found that the hardship was not the result of any prior action by applicant and does not result primarily from the desire of the applicant to realize financial gain. Such lot was created by a deed dated September 17, 1928. (Tr. at 4) Further, Karl Wallins testified that he and his wife are seeking to build a three bedroom house with the smallest area necessary to reasonably enjoy the house and as narrow as possible in order to allow for 25 foot setbacks. (Tr. at 20.) The Board had sufficient evidence before it to find that the Wallins seek to enjoy their property, by building a house in which to live not to realize financial gain. In compliance with the ordinance of 706 (D)(3), the Board made the finding that the dwelling will not alter the general characteristic of the surrounding area or impair the intent or purpose of the Zoning Ordinance. The Wallins have sought to build a house designed in a style found throughout the island. (Tr. at 20). Further, the Zoning Ordinance clearly expresses the intent to protect the ability to build on nonconforming lots that existed before the ordinance was passed. (See Ordinance, § 113). The Board's finding that the requested relief is the least relief necessary to remove the hardship is also supported by the record. The proposed house is a three-bedroom house consisting of only 1256 square feet. (See
Application for Special Exception, Variance or Appeal at 1256). In order to be in conformance with the statute (4% of the lot and 50 foot setbacks), a house on the subject lot would have to be only 680 square feet and approximately 9 feet wide. The Board's finding that a three-bedroom house 1256 square feet with 25 foot sideyard setbacks complied with this requirement was not clearly erroneous. Finally, the Board found that such relief was necessary to enjoy a single-family residence on the lot. As stated above, the lot cannot be put to any use besides a single-family residence. Further, the Board's finding that a house of 1256 square feet is a reasonable size considering the lot's area and shape is not clearly erroneous. Accordingly, the Board's decision that the New Shoreham's Zoning Ordinance's standard for a variance was satisfied was supported by reliable, probative and competent evidence.
Procedural Defects
Plaintiff also asserts that the decision of the Board should be overturned as there were various procedural defects in the process. Plaintiffs cite the failure of the Wallins to submit certain documents required by the New Shoreham Zoning Ordinance with their variance and special use permit application, namely DEM approval for the ISDS and final detailed plans prepared and stamped by a registered civil engineer. They assert those items should have accompanied the application and that such requirements were never waived by the Board.
The Wallins' request for such waiver was acted upon at the Board's meeting of June 27, 1994. (See Minutes of Zoning Board of Review meeting, June 27, 1994). Contrary to plaintiff's assertion, neither the Ordinance at 703 (C)(6) nor 706 (B)(1) requires DEM approval of the septic system be submitted with the application.[5] Further, § 701 (B)(2), which is also cited by the plaintiff, and does require a DEM certificate of approval, is not applicable to variance or special use permit requests which are covered by § 703 and § 706 respectively. And, even assuming such submission were required with the application, the Board conditioned the grant of the variance and the special use permit on the submission of such DEM certificate of the ISDS. Plaintiff would not be prejudiced regardless of when such submission was made.
Plaintiff was also not prejudiced by the fact that the plans required under 703 (C)(3) were not stamped final. At the hearing, Karl Wallin represented that the septic system had been moved over to 112 feet from the wetlands on the plans submitted to the DEM. (Tr. at 8). The Board based its approval on these representations by Mr. Wallin and the fact that the final plan would reflect such information. Further, the Board conditioned its approval of the variance and special use permit on the submission of these stamped plans.
Findings of Fact
Plaintiff also disputes three findings of fact made by the Board. Finding of Fact B states that the square footage of the foundation which presently stands on the lot is "close" in size to the foundation which the Wallins plan to build and Finding of Fact J states that the Payne lot for which a variance was recently granted is only "slightly larger" than the Wallin lot. Essentially, Plaintiffs argue about the Board's choice of words which is not material to the Board's decision. The Wallins are not expanding a non-conforming use by building on the old foundation. Further, the Wallins are entitled to build on the subject lot as a single non-conforming recorded lot regardless of its size where it meets the variance standards of 706 (D) which the Board found it did.
Finally, the Plaintiffs argue that there is no evidence in the record to support Finding of Fact F, i.e., that the applicants have a signed Purchase and Sale Agreement for the lot. The record reveals that Karl Wallin testified that he and the Cavanaughs had a signed Purchase and Sale Agreement and that it had been presented to the Planning Board. (Tr. at 16, 17). The Board found such testimony credible and chose to find that a signed purchase and Sale Agreement existed. Accordingly, this Court will not now reverse that finding of fact on appeal.
Conflict of Interest
Finally, the plaintiffs urge this Court to overturn the decision of the Board due to an alleged conflict of interest on the part of the Zoning Board Chairman, John Spier. Plaintiffs allege that John Spier presided over the votes of the decision, testified as to facts before the Zoning Board, dictated portions of the motion of approval, and signed the decision and that these activities "poisoned the entire proceeding."
In accordance with the Rhode Island Code of Ethics, R.I.G.L. 1956 (1990 Reenactment) § 36-14-1, et. seq., John Spier filed recusal forms for both the June 27, 1994 preliminary hearing on the application waiver request and the August 22, 1994 application hearing because he was to be involved in the construction of the Wallin house. (See Minutes of Zoning Board of Review Hearing, June 27, 1994). He did not participate in the June 27, 1994 preliminary hearing. However, the record of the August 22, 1994 hearing reflects that Plaintiffs' allegations of Chairman Spier's participation are mainly accurate. At one point, he spoke concerning decks on the Wallin house, (See Tr. at 35); he appears to have adjusted some wording in the decision, (See
Tr. at 36); he presided over the vote, (See Tr. at 37) and signed the decision letter. (See Decision Letter at 3). This conduct is inappropriate and inexcusable. However, the record indicates that this action by the Chairman did not "poison the entire proceeding" or prejudice the Plaintiffs. There was a 5-0 vote to approve the variance and special exception. Plaintiffs have failed to show they were prejudiced by this conduct. While it is suggested that Mr. Spier may have violated the Rhode Island Code of Ethics through his inappropriate conduct, that is not the issue before this Court. The Rhode Island Ethics Commission is the appropriate forum to address any such allegations.
Conclusion
After reviewing the entire record, this Court finds that the decision of the Board was supported by reliable, probative and substantial evidence. Further, such decision was not affected by error of law or procedure which prejudiced plaintiffs substantial rights. Accordingly, the decision of the Board granting a Variance and Special Use Permit to Karl and Carolyn Wallin for Plat 9, Lot 124 on the Assessor's Plat Plan for the town of New Shoreham is, therefore, affirmed.
Counsel shall submit the appropriate order for entry.
[1] Although the subject land was owned by Herbert A. and John W. Cavanaugh (hereinafter the "Cavanaughs") at the time of the Board hearing, the Wallins have a signed purchase and sale agreement for the lot.
[2] The sideyard setback was necessary as the Wallin property is only 109 feet at its widest point.
[3] Such wetland is located on the property of Carole Payne which is designated as Plat 9, lot 123 on the assessor's map.
[4] Contrary to what plaintiffs assert, the "Viti" variance which is now codified in New Shoreham Ordinance and R.I.G.L. Title 42, has not been replaced by the modifications permit. "Modification permits" apply only to smaller deviations, up to twenty-five percent (25%) from any yard requirements, and are provided an abbreviated procedure in the ordinance. See Ordinance at § 705.
[5] Section 703 (C)(6) merely requires a written description and engineer's plan indicating how all utility and disposal needs as well as the standards of 501 (A)(5) and (8) will be met while 706 (B)(1) requires a plot plan showing the location of the sewage disposal system.