DECISION
Before the Court is a timely appeal from a decision of the Defendant Zoning Board of Review of the City of Warwick (hereinafter referred to as the Board). Samuel Rouslin (hereinafter referred to as Rouslin) and Jean Rouslin (hereinafter referred to collectively as Appellants) seek a reversal of a June 18, 1994, decision granting approval of the application of Defendant Scanlon Enterprises, Inc. (hereinafter referred to as Scanlon) for an exception or variance under the Zoning Ordinance of the City of Warwick (hereinafter referred to as the Ordinance). Jurisdiction in this Court is pursuant to G.L. 1956 (1991 Reenactment) § 45-24-69.
FACTS AND PROCEDURAL HISTORY
Scanlon owns property fronting on Bruce Lane, Warwick, also known as Lot 15 on Assessor's plat 234 (hereinafter referred to as Lot 15). (Record, Exh. A). Said vacant and unimproved property, consisting of 15,000 square feet with 100 foot frontage and 150 foot depth, is zoned Residential A-15.[1] (Id.).
Appellants are abutters owning property within a 200 foot radius of Scanlon's property. (Record, p. 4).
On October 25, 1993, Scanlon applied to the Board for an exception or variance. Specifically, Scanlon sought a variance from Table 2A — Dimensional Regulations:[2] a minimum frontage requirement of 125 feet and a minimum lot width requirement of 125 feet. (Record, Exh. A).
At a duly publicized and scheduled hearing on June 28, 1994, the Board heard Scanlon's petition. At the outset, the Board heard from Mark Carruolo of the City of Warwick Planning Department (hereinafter referred to as the Planning Department). (Tr. p. 1). The Planning Department determined that Scanlon was "requesting permission to subdivide a parcel creating a non-conforming lot for the purposes of constructing a dwelling," the subject Lot 15 results from an illegal subdivision precipitated by its separation from Lot 17 in 1980 without Zoning Board approval [Lot 17 contains a single-family dwelling (Tr. p. 4)]; the Planning Department considered Lot 15 and Lot 17 merged into one lot for the purposes of building. (Tr. p. 1).
Scanlon, by counsel, presented testimony and expert testimony concerning its proposed construction, the nature of the neighborhood and subject property and its hardship in the absence of relief. In seeking relief from the frontage requirement, Scanlon submitted that the proposed construction plan complies with all other dimensional requirements of the Ordinance. (Tr. p. 2). Scanlon relied on § 403.2.[3] (Tr. pp. 3-4). Further, in taking the 20 foot side yard requirement in conjunction with § 601.2,[4] Scanlon proposed, it is possible to have a garage within ten feet of a side lot line. (Tr. pp. 3-4). Pertaining to the chain of title, Scanlon admitted that Lots 15 and 17 were under common ownership in 1980. (Tr. pp. 4, 11).
Scanlon argued that there is a case for a [true] variance in that, without relief, Scanlon will be deprived of all beneficial use of the property and that without a dimensional variance, Scanlon will suffer more than a mere inconvenience. (Tr. pp. 5-6). Scanlon presented Francis J. McCabe (hereinafter referred to as McCabe) who was accepted as an expert real estate witness. (Tr. p. 6). McCabe stated that denial of Scanlon's petition would amount to a confiscation of the land; if allowed to build, there would be no loss in use, value or enjoyment of any of the nearby properties; without relief, Scanlon would suffer more than a mere inconvenience. (Tr. p. 8). McCabe stated that Lot 15 and the dwelling proposed by Scanlon is compatible with the size of many of the surrounding lots and their respective dwellings. (Tr. pp. 7-8).
Opposition to Scanlon's request was voiced by Attorney David Revens (hereinafter referred to as Revens) representing neighbors in opposition including the Appellants (hereinafter referred to collectively as Objectors). (Tr. p. 10). The Board recorded the names of approximately twenty persons present and objecting to Scanlon's petition. (Tr. p. 21). Additionally, Objectors presented a petition signed by approximately forty owners of property within 200 feet of the subject lot. (Tr. p. 12, Record Exh. C7).
The Objectors opposed Scanlon's application arguing that it seeks a true variance in order to legitimize an illegal subdivision created by Scanlon's predecessor in title. (Tr. p. 11). In support, Objectors presented documentation of a January 14, 1981, Board decision wherein it details the chain of ownership of Lots 15 and 17 and states that adjacent Lots 15 and 17 on Assessor's Plat 234 both failed to have the required 125 foot of lot width . . .; both Lots, joined together, meet said requirement; . . . if the owner of Lot 15 wishes to erect a dwelling on said property, the owner must receive the Board's approval. (Tr. pp. 10-12, Record, Exh. 6). Revens stated that said Board decision was upheld by the Superior Court. (Tr. p. 10).
In emphasizing the merger of Lots 17 and 15, Objectors introduced copies of the Assessor's Plat cards for the respective lots. (Tr. p. 14, record, exh. C14). Additionally, Rouslin submitted a copy of a May 3, 1994, letter from Attorney Timothy T. More (hereinafter referred to as More) to Carol Wright of the Board in which More opined that Scanlon may proceed with its zoning application to seek relief from the zoning requirements; however, no building permit should be issued without subdivision approval and the person who created the subdivision should be fined. (Tr. p. 16, Record Exh. C16). Thus, Objectors contend that an illegal subdivision had taken place and the Board's approval of Scanlon's request for dimensional variance legitimizes it.
Objectors argued that Scanlon applied for a true variance after creating its own hardship thus, was improperly requesting relief. (Tr. p. 11). Objectors argued that there was common ownership of Lots 15 and 17 for more than 100 years prior to 1980 and before the zoning code existed. (Tr. p. 11, Record Exh. C6). Further, the Objectors contend that Scanlon has no basis to claim hardship or deprivation of the rightful use and enjoyment of his property because G.L. 1956 (1993 Reenactment) § 42-23-13 provides relief.[5] (Tr. p. 12, Record Exh. C8). Further, Scanlon's hardship claim, if any, was self-created. (Tr. p. 11).
In addition to arguing that the Board made an error of law in finding Scanlon's request to be a dimensional variance rather than legitimizing an illegal subdivision, the Objectors argue that Scanlon actually sought a true variance, a dimensional variance and a special exception. (Tr. p. 14). In addition to the minimum frontage and minimum yard width relief, Objectors contend that Scanlon's plan indicates a sideyard setback of the garage of 12 feet rather than the required 20 foot sideyard setback for an A-15 district thus placing Scanlon's request outside of a dimensional variance. (Tr. p. 14).
Finally, Objectors presented J. Clifton O'Reilly (hereinafter referred to as O'Reilly), an expert real estate witness. (Tr. p. 17). O'Reilly stated that Scanlon's application sought a pure variance, relief from topography or size or shape of a lot, and that Scanlon did not meet the pure variance hardship standard. (Tr. p. 17). After surveying the entire neighborhood, O'Reilly concluded that the use and enjoyment of the surrounding properties would be impaired if Scanlon's request was granted. (Tr. pp. 17-18).
Steven McAllister (hereinafter referred to as McAllister), owner of Lot 17 with his wife since June 10, 1985, (Record, Exh. C14), opposed Scanlon's application. (Tr. p. 19). He stated that the City Planning Department had notified him on March 23, 1994, that his property had insufficient frontage; a property lien so stating had been recorded in the Office of Land Records. (Tr. p. 19). McAllister stated that a March 24, 1994, Planning Staff memo misstated that he refused to cooperate with Scanlon's application for a subdivision. (Tr. p. 19-20). McAllister denied the alleged lack of cooperation stating that he had never been contacted about a subdivision application; McAllister felt that his land status should take precedence over Scanlon's application. (Tr. p. 20).
The Board voted 4 to 1 in favor of Scanlon's application. (Tr. p. 21). In its decision, the Board found the following facts:
 (1) the subject property contains 15,000 square feet of land, more or less, and is zoned Residential A-15,
 (2) Scanlon has owned the subject property since August 5, 1993,
 (3) the subject property is a vacant 100 foot by 150 foot parcel of land,
 (4) Scanlon proposes to construct at 28 foot by 36 foot single-family dwelling with an attached 22 foot by 28 foot garage,
 (5) all setback requirements will be met for a Residential A-15 zoned property,
 (6) the entire area is occupied by single-family dwellings, and
 (7) that petitioner is requesting a dimensional variance for relief from the frontage requirements; the required frontage is 125 feet, the subject property has 100 feet of frontage in Bruce Lane.
Based on its findings, the Board granted the request because:
 A. The granting of this request would not be detrimental or injurious to the use, value or enjoyment of the surrounding properties; the subject property has sufficient area as not to contribute to increase density in the neighborhood. The request for a deviation from the frontage and width requirements is a minimal request in the Board's opinion.
 B. The proposal would be compatible with the surrounding properties; the dwelling will be occupied for single-family occupancy and would be compatible with the design and construction of the dwelling that already exists in the area. (Decision, p. 1).
STANDARD OF REVIEW
Superior Court review of a zoning board of review decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D) which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 "(1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board of review, a justice of the superior court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolou v. Genovesi, 120 R.I. 501, 507,388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v.George Sherman Sand and gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou, 120 R.I. at 507, 388 A.2d at 824-25). When determining an appeal from a zoning board of review's decision, the court is authorized by statute to admit evidence when it appears to the court that the evidence is necessary for a proper disposition of the matter. General Laws 1956 (1991 Reenactment) § 45-24-69(C). See Fryzel v. Zoning Board of Review,105 R.I. 491, 494, 252 A.2d 918, 920 (1969). On review, the Supreme Court examines the record to determine whether "competent evidence" supports the Superior Court judge's decision. R.J.E.P.Associates v. Hellewell, 560 A.2d 353, 354 (R.I. 1989).
STATUS OF LOT 15
Appellants contend that the Board made an error of law in considering Scanlon's petition as a "dimensional variance" because the requested relief sought more than a dimensional variance and attempted to legitimize an illegal subdivision created by Scanlon's predecessor in title. Because Lots 15 and 17 merged, Appellant argues, the Board's decision violates § 304.4 of the Ordinance. Section 304.4 allows no more than one residential building with its accessory building on one (1) lot.[6] Therefore, Scanlon inappropriately requested permission to build a second residential building on the merged lot. Appellant further argues that the Board's grant of Scanlon's petition legalizes the prior violation of § 403.1 of the Ordinance because it allows the separate sale of Lot. 15.[7]
Appellant argues that the Board's decision granting Scanlon a dimensional variance legalizes a past flagrant violation of the Ordinance in order for Scanlon to make a more profitable use of Lot 15 or for Scanlon's convenience in order to avoid other legal action to obtain relief. See Rozes v. Smith, 120 R.I. 515, 521,388 A.2d 816, 820 (1978).
In its brief, the Board argues that Scanlon owns a lot which conforms in all respects to the A-15 zoning requirements other than lot frontage; without zoning relief, Scanlon would not only suffer more than a mere inconvenience; indeed, Scanlon would be denied all beneficial use of its property. The adjoining lot [Lot 17] has received a zoning variance for lot frontage and the appellants took no appeal therefrom. For these reasons, the City requests that the court affirm the Board's decision.
Scanlon contends that because the Planning Board has effectively subdivided the subject property, a determination which was never appealed, it properly seeks a dimensional variance.[8]
RELIEF SOUGHT
As argued before the Board, appellants contend that the subject decision of the Board is affected by error of law and is violation of the Ordinance and G.L. 1956 (1991 Reenactment) §45-24-19(C). Appellants argue that the Board made an error of law in considering Scanlon's request as a dimensional variance rather than a true variance. In so arguing, Appellants contend that Scanlon requires a true variance and therefore, must meet the unnecessary hardship standard. Further, the Appellants contend that Scanlon has no basis to claim hardship or deprivation of the rightful use and enjoyment of his property because G.L. § 42-23-13 provides relief and because Scanlon's hardship, if any, was self-created.
In its application, Scanlon specifically requested a dimensional variance or deviation. A deviation or "Viti" variance is relief from restrictions such as setbacks, minimum lot-size and frontage requirements. Felicio v. Fleury, 557 A.2d 480, 482 (R.I. 1989). The Ordinance requires that the frontage and lot width be 125 feet. Scanlon's lot has a 100 foot frontage and lot width. Accordingly, a dimensional variance or deviation is the appropriate remedy. In such a case, "[t]he showing necessary to obtain a deviation is that the landowner need only demonstrate an adverse impact amounting to more than a mere inconvenience." Id.
at 482 (citing Gara Realty, Inc. v. Zoning Board of Review ofSouth Kingstown, 523 A.2d 855, 858 (R.I. 1987); DeStefano v.Zoning Board of Review of Warwick, 122 R.I. 241, 246, 246,405 A.2d 1167, 1170 (1979) and Viti v. Zoning Board of Review ofProvidence, 92 R.I. 59, 65, 166 A.2d 211, 214 (1960)). As stated by Scanlon's expert witness and the Board in its memorandum, Scanlon would suffer more than a mere inconvenience if unable to build on Lot 15. Further, the Board determined that Scanlon's proposal would be compatible with the surrounding properties and it would not be detrimental or injurious to the use, value or enjoyment of the same. Based on its findings, the Board determined that Scanlon satisfied the standard for a dimensional variance and granted Scanlon's request which it considered a minimal request. The Board granted the least amount of relief necessary. It is presumed to know the effective administration of the Ordinance.
CONCLUSION
In the ordinary course, this matter might be remanded to the Board for further proceedings. However, in view of the Planning Board's subsequent action authorizing the subdivision of Lot 17 from Lot 15, this Court believes that such a directive is unnecessary. After reviewing the entire record, the Court finds that the decision of the board granting a dimensional variance is not clearly erroneous and is supported by reliable, probative and substantial evidence in the record. Accordingly, the subject decision of the Board is hereby affirmed.
Counsel shall submit the appropriate order for entry.
[1] A Residential A-15 district permits one (1) single family dwelling unit per lot area measuring a minimum of fifteen thousand (15,000) square feet. (City of Warwick Zoning Ordinance, § 301.3).
[2] Table 2A — Dimensional Regulations for a Residential A-15 district requires:
Minimum lot area: 15,000 square feet; Minimum frontage: 125 feet; Minimum lot width: 125 feet; Minimum front and corner side yard: 30 feet; Minimum side yard: 20 feet; Minimum rear yard: 30 feet; Maximum structure height: 35 feet; Minimum landscaped open space: 15%. (City of Warwick Zoning Ordinance, § 302, Table 2A).
[3] Section 403.2 of the Ordinance, entitled "Residential use of nonconforming lots," provides:
"In any district in which dwellings are permitted, a dwelling may be erected, enlarged or altered on a nonconforming lot or two (2) or more abutting nonconforming lots subject to the following: . . .
(B). Where such lot or lots contain seven thousand (7000) square feet or more, and have a minimum frontage of at least fifty (50) feet, a new dwelling may be constructed thereon without approval from the zoning board of review being necessary; provided, that such construction complies with the front and corner side yard, side yard and rear yard requirements of Table 2A — Dimensional Regulations for the district in which such lot is located."
[4] Section 601.2 of the Ordinance, entitled "Location of accessory buildings and uses," provides:
"A building or use accessory to a dwelling, including an attached or detached garage or carport, shall not be located in any required front or corner side yard, shall not be located within ten (10) feet of any rear lot line, and may be located within a require[d] side yard as follows:
In Residential District A-15 to within ten (10) feet of a side lot line."
[5] The Objectors' introduced a copy of said statutory section. It provides that:
"Any sale of land subdivided in violation of any ordinance enacted pursuant hereto shall voidable at the option of the purchaser thereof, and shall subject the seller thereof, to the forfeiture of any and all consideration received or pledged therefor, together with any damages sustained by the purchaser, who may maintain an action of the case to recover any amounts due him or her under the provisions of this section." General Laws 1956 (1993 Reenactment) § 42-23-13.
[6] Section 304.4 of the Ordinance, entitled "Only one dwelling structure on any lot," in relevant part, provides:
"In no case shall there be more than one (1) main residential building and its accessory buildings on one (1) lot." (City of Warwick Ordinance, § 304.4).
[7] Section 403.1 of the Ordinance, entitled "Abutting nonconforming lots," provides:
"I[f] two or more abutting nonconforming lots are held in the same ownership either at the time of or subsequent to the effective date of this ordinance or any amendment thereto, such lots shall be combined for the purposes of this ordinance in order to conform to any of the dimensional requirements of this ordinance for the district in which the lots are located and such lots shall not be sold separately."
[8] Pursuant to G.L. § 45-24-69(C) and Rule of Evidence 201, the Court takes notice, as here requested by Scanlon, of the certified decision of the Board dated February 21, 1995 (hereinafter referred to as the Lot 17 decision) which granted Lot 17 a minimum frontage variance from which no appeal was taken. (Scanlon Exh. C). See L.A. Realty v. Planning Board,603 A.2d 315 (R.I. 1992). Additionally, the Court takes notice of the certified copy of plat card 948 and expressly makes it part of the record in this case. (Scanlon Exh. E). Said plat card bears the stamp and signature of the chairperson of the Warwick City Planning Board indicating that the subdivision of Lot 17 from Lot 15 is deemed approved by the Planning Board on June 8, 1995. See
G.L. 1956 (1991 Reenactment) § 45-23-9.