**R.J.E.P. ASSOCIATES**

v.

**Martin S. HELLEWELL et al.**

**No. 88–277–M.P.**

Supreme Court of Rhode Island.

June 22, 1989.

---

Douglas James Rose, Philip W. Noel, Coffey, McGovern, Noel & Neal Ltd., Providence, for plaintiff.

G. Quentin Anthony, MaryJo Carr, Sheffield & Harvey, Newport, for defendant.

## OPINION

FAY, Chief Justice.

This case comes before the Supreme Court pursuant to our grant of a writ of certiorari. The Jamestown Zoning Board of Review (zoning board) rejected the appeal of the plaintiff, R.J.E.P. Associates, from the building inspector's denial of a building permit. The plaintiff now seeks review of a Superior Court decision that upheld the actions of the zoning board. We affirm the decision of the Superior Court.

When we examine the Superior Court's review of a zoning-board decision, our primary concern is whether the trial justice acted within the authority granted in G.L.1956 (1988 Reenactment) § 45–24–20. *Felicio v. Fleury*, 557 A.2d

480, 481 (R.I.1989). Section 45–24–20(d) states in part:

> "The [Superior] court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced."

We shall not weigh the evidence but rather examine the record to determine whether competent evidence exists to support the Superior Court justice's decision. *Felicio*, 557 A.2d at 482; *Lett v. Caromile*, 510 A.2d 958, 960 (R.I.1986); *Rhode Island Hospital Trust National Bank v. East Providence Zoning Board of Review*, 444 A.2d 862, 863 (R.I.1982). In addition, we shall not reverse the decision below unless it is shown that the Superior Court justice misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong. *Lett*, 510 A.2d at 960; *Camara v. City of Warwick*, 116 R.I. 395, 407, 358 A.2d 23, 31 (1976). Mindful of our standard of review, we set out the undisputed facts pertinent to this appeal as follows.

At a tax sale in 1954 the Court Company, owned by John and James Quattrocchi (Quattrocchis), acquired lot Nos. 56, 58, and 59, located on Summit Avenue, Jamestown, tax assessor's map plat No. 1. Under the town's zoning ordinance and amendments thereto, the three lots are located in an R–80 zoned district, which requires a minimum of 80,000 square feet per lot prior to the issuance of a building permit for a single-family dwelling. Lot No. 56 contains approximately 40,000 square feet, and lot Nos. 58 and 59 each contain approximately 20,000 square feet.

The Quattrocchis subsequently perfected the titles to lot Nos. 56 and 59. Lot No. 58, which is still owned by the Quattrocchis, has a cloud on its title that has not been cleared from any of the equities of redemption. A small portion of lot No. 56 was sold to a third party and is designated as lot No. 57 on the assessor's map.

On November 21, 1986, the Quattrocchis sold lot Nos. 56 and 59 to plaintiff. After acquiring these lots, plaintiff applied to the building inspector for a permit to construct a single-family dwelling on lot No. 56. The building inspector refused to issue such a permit pursuant to article 4, § 406, of the Jamestown zoning ordinance.[1]

The plaintiff then appealed the building inspector's decision to the zoning board. The board upheld the denial of the permit. According to article 4, § 406, the zoning board determined that lot Nos. 56, 58, and 59 had merged to form a single parcel of land because the lots were contiguous and were previously held under the same ownership. The zoning board based its decision on the following findings: "(1) At one time lots 56, 58, and 59 were taxed to Court Co., Inc. or James R. Quattrocchi and John Quattrocchi, III; (2) Plat 1, lots 56, 58, and 59 are in an R–80 zone; (3) Lot 56 contains approximately 40,000 square feet; (4) Lot 56 was sold to R.J.E.P. Associates on November 21, 1986, after enactment of the present zoning [ordinance]; and, (5) Lots 56, 58, and 59 are unimproved lots."

Thereafter, plaintiff appealed to the Superior Court pursuant to § 45–24–20(a).[2] In a written decision, a Superior Court justice noted that although the facts of this case were undisputed, the parties differed in regard to the application of the zoning ordinance. The plaintiff contended that the Jamestown zoning ordinance clearly permits the building of a single-family dwelling on lot No. 56. Although lot No. 56 is a substandard lot, plaintiff argued, it did not own any adjacent land to lot No. 56; therefore, lot No. 56 had not merged with any other lot. Furthermore, plaintiff alleged, a

merger could not have taken place previously between lot No. 58 and any contiguous lot or lots since the title to lot No. 58 was not held free and clear. Conversely, the zoning board argued that lot Nos. 56, 58, and 59 had merged into a single parcel of land because the lots were contiguous and under single ownership from 1954 to 1986. Therefore, the zoning board contended that it had not erred in affirming the building inspector's denial of a building permit, pursuant to article 4, § 406.

After reviewing the record, transcript, and memoranda of counsel, the Superior Court justice denied plaintiff's appeal and affirmed the decision of the zoning board. The plaintiff then filed a petition for writ of certiorari to review the decision of the Superior Court, and we issued a writ pursuant thereto.

An initial examination of the concept of merger will be helpful to our review. Merger generally requires the combination of two or more contiguous lots of substandard size that are held in common ownership in order to meet the minimum-square-footage requirements of a particular zoned district. *See Dedering v. Johnson,* 307 Minn. 313, 239 N.W.2d 913 (1976) (court held that where owner of nonconforming undeveloped lot also owns adjacent undeveloped lot, owner must combine lots to meet minimum zoning requirements). Substandard contiguous lots cannot be developed as individual nonconforming lots unless the landowner applies for a variance or an exception. Although a variance was denied in *Gaglione v. DiMuro,* 478 A.2d 573, 576 (R.I.1984), we stated that before a variance will issue, a landowner must show by pro-

---

1. The town of Jamestown zoning ordinance, article 4, § 406, provides:

    "Substandard Lots of Record.—No lot area, shall be so reduced that yards, total area, and lot width shall be less than prescribed for the district in which the lot is located. No yard or open space provided around any building for the purpose of complying with the provision of this ordinance shall again be used as a yard or open space for any other building. "Where no adjacent land is in the same ownership so as to form a larger land parcel, a lot smaller than the minimum dimensions and area required by this ordinance which was a

lot of record on the effective date of this Ordinance may be used for a single family dwelling."

2. General Laws 1956 (1988 Reenactment) § 45–24–20(a) provides in part:

    "Appeals to Superior Court.—(a) Any person or persons jointly or severally aggrieved by a decision of the zoning board may appeal to the superior court for the county in which the municipality is situated by filing a complaint setting forth the reasons for the appeal within twenty (20) days after a decision has been filed in the office of the zoning board."

bative evidence that a literal application of the zoning ordinance would cause a deprivation of all beneficial use of the property.[3]

Moreover, merger provisions frequently contain exceptions whereby a lot that is smaller than the minimum zoning requirements will be exempted from the merger rule if it was a lot of record prior to the effective date of the zoning ordinance. Such an exception allows the landowner to develop a substandard lot only if the lot remains isolated and was under single ownership at the time the zoning ordinance was adopted. However, if the landowner owns any adjacent lots that, if combined, would satisfy the square-footage requirements, then the landowner is not entitled to the exception. The landowner therefore must merge the lots to form a single parcel of land that will meet the area requirements.

Turning to article 4, § 406, of the Jamestown zoning ordinance, we believe that § 406 clearly provides for the merger of substandard lots that are contiguous and share ownership. The zoning ordinance defines "lot" as a parcel of land in single or undivided ownership that may consist of more than one lot of record. Article 4, definition 16. Reading the definition of "lot" along with § 406, one sees that the merger provision clearly applies to substandard lots. Article 4, § 406, also provides for an exception to the forced-merger provision "where no adjacent land is in the same ownership so as to form a larger land parcel." Under the Jamestown zoning ordinance, a landowner who meets the prescriptions of this exception will be allowed to construct a single-family dwelling on a lot that is smaller than the minimum square-footage requirements in a particular district. We do not believe that § 406 is ambiguous or vague. Therefore, we find that the exception does not apply in this case and that the zoning board and Superior Court correctly applied article 4, § 406.

It is uncontradicted that lot Nos. 56, 58, and 59 are contiguous and were under common ownership from 1954 to 1986. It is clear to us, as it was to the building inspec-

tor, the zoning board, and the Superior Court, that between 1954 and 1986 lot Nos. 56, 58, and 59 had merged into a single parcel of land while these lots were held in common ownership by the Quattrocchis. Therefore, after examining the record, we are of the opinion that competent evidence exists to support the decision of the Superior Court.

We find no merit to plaintiff's argument that lot No. 58 could not have merged with any other lot or lots because of the cloud on the title to lot No. 58. The fact that lot No. 58 is subject to any equities of redemption relates solely to the marketability and not to the ownership of the lot. We have previously held that a deed conveyed at a tax sale "bars or extinguishes all former titles, interests, and liens not specifically excepted." *Picerne v. Sylvestre*, 113 R.I. 598, 600, 324 A.2d 617, 618 (1974). Furthermore, the title conveyed is "absolute subject only to defeasance by redemption." *Id.* at 600–01, 324 A.2d at 618; *see also Sleboda v. Heirs at Law of Harris*, 508 A.2d 652, 655 (R.I.1986); *Green Acres Realty, Inc. v. Rocchio*, 115 R.I. 407, 409, 347 A.2d 407, 409 (1975).

Upon purchasing lot Nos. 56, 58, and 59 at a tax sale, the Quattrocchis acquired absolute title to the property subject only to any equities of redemption. Therefore, we find that the cloud on the title to lot No. 58 has no bearing on the merger of lot Nos. 56, 58, and 59 while under the ownership of the Quattrocchis.

We believe that the Superior Court justice correctly applied article 4, § 406, and acted within the authority granted under § 45–24–20. It is evident that the Superior Court justice did not misapply the law or misconceive or overlook material evidence. On the basis of this review, we hold that the Superior Court's decision upholding the denial of a building permit for a single-family dwelling on substandard lot No. 56 was clearly supported by the evidence presented.

---

**3.** It should be noted that plaintiff did not apply for a variance. Since this appeal comes to us solely from the denial of a building permit, we shall not address the variance issue.

For the reasons stated, the petition for certiorari is denied and the writ previously issued is hereby quashed. The papers in this case are remanded to the Superior Court with our decision endorsed thereon.