**Stephen D. McKENDALL et al.**

v.

**TOWN OF BARRINGTON et al.**

**No. 88–590–A.**

Supreme Court of Rhode Island.

March 14, 1990.

Kenneth M. Beaver, Arcaro, Belilove & Kolodney, Providence, for plaintiff.

Susan E. McGuirl, Cerilli, McGuirl, Hustwit & Bicki, Providence, for defendant.

OPINION

FAY, Chief Justice.

This case comes before us on the appeal of the plaintiffs, Stephen D. McKendall and Frances O. McKendall, from a Superior Court dismissal of their petition for declaratory and injunctive relief. We affirm.

The undisputed facts pertinent to this appeal are as follows. The plaintiffs are the record owners of fifteen lots located on Ferrier Avenue in Barrington, Rhode Island. Situated in an R–25 district as defined in section 8–3 of the Barrington Zoning Ordinance title 6, chapter 11 (ordinance), the property is more specifically described as lot Nos. 85 through 99 and were recorded in the Barrington Town Office in 1915.[1] Each of the lots comprises approximately 1,762 square feet, and all were unaffected by any zoning ordinance at the time of the recording. Presently, however, they are substandard under the ordinance.[2]

---

1. Section 8–3 of the Zoning Ordinance of the Town of Barrington defines R–25 as follows:

"8–3  Residence 25 District (R–25)

| | | |
|---|---|---|
| A. | Minimum lot area, single family dwelling | 25,000 sq. ft. |
| B. | Minimum lot area, single family dwelling with accessory living quarters or guest house | 40,000 sq. ft. |
| C. | Minimum 1 area, other permitted or special exception use in an R–25 zone | 50,000 sq. ft. |
| D. | Minimum lot width at the building line | 140 feet |
| E. | Minimum lot frontage at the street line | 140 feet * |
| F. | Minimum depth of front yard | 30 feet |
| G. | Minimum depth of rear yard | 25 feet |
| H. | Minimum width of side yard (each side) | 14 feet or 10% of the frontage, which ever is greater |
| I. | Maximum height of principal structures | 35 feet |
| J. | Maximum height of accessory structures | 15 feet |
| K. | Maximum lot coverage | 20 percent |
| L. | Minimum set back of accessory structure from side or rear lot line | 14 feet |

" * Where a lot abuts a cul-de-sac or the outside curve of a street with a center line radius of less than 150 feet, the lot frontage on the street may be reduced to 75 feet, the lot width at the building line must, however, be no less than 140 feet."

2. Section 9–1 of the ordinance, defining substandard lots, reads:

"9–1  Substandard Original Lots

A substandard original lot having frontage on a street may be used for any purpose permitted in its zoning district if such lot was shown on a recorded deed or plat entered into the records of land evidence in the office of the Town Clerk on the effective date of this ordinance or any prior ordinance or amendment rendering it substandard; provided, however, where such substandard original lot has one

During the summer of 1988 plaintiffs applied for, and were denied, a permit to construct residences on these lots. The underlying rationale for the refusal of the building inspector, Robert Speaker, to issue the permit was plaintiffs' failure to combine, by deed or otherwise, their substandard lots as required by sections 9–1 and 9–3 of the ordinance.

The plaintiffs challenged the denial of a building permit in the Superior Court, seeking declaratory and injunctive relief. Their primary contention was that the merger provision of section 9–3 of the ordinance, in effect, creates a new subdivision and, therefore, is governed by the provisions of General Laws 1956 (1988 Reenactment) chapter 23 of title 45. Accordingly, § 45–23–23, proscribing the merger of plats

recorded prior to the enactment of the zoning ordinance, would operate to preclude a denial of the requested building permit.[3]

The Superior Court disagreed with plaintiffs' assertions and held that the present dispute concerned zoning, not the subdivision of land, and that therefore G.L.1956 (1988 Reenactment) chapter 24 of title 45 was controlling. We agree with the Superior Court's determination.

Rhode Island General Laws empowers its cities and towns to regulate, for the purpose of promoting the general welfare, the quality and nature of structures erected within their borders. Section 45–24–1. The regulation of lot sizes and the creation of districts for a specified use or purpose are also authorized. Sections 45–24–2 and 45–24–3.[4]

or more common boundaries with another lot owned by the same owner or his or its affiliate as defined herein, such lots shall be combined in accordance with the provisions of Subsection 9–2. For the purposes of this Section 9, an 'affiliate' means, with respect to a specific owner: (1) such owner's parents (blood or adoptive), spouse, children or grandchildren (blood or adoptive) or any blood relative residing with such owner; (2) a trustee of a trust for the benefit of such owner or of any person identified in the immediately preceding clause; or (3) a corporation, partnership, firm, business or entity of which the majority of the voting interest is owned by such owner or any person identified in clause (1) and (2) above; or (4) a person who is an officer, director, stockholder (15% or more), trustee, employee, or partner of any entity or person referred to in clauses (1), (2) and (3) above."

Further, Section 9–3 of the ordinance provides:

"9–3 Combining Lots in the Same Ownership Where land adjacent to a substandard original lot is owned by the owner of said substandard original lot or his or its affiliate, the exemption of Subsection 9–1 shall not apply and said substandard original lot shall be combined with said adjacent land to establish a lot or parcel having at least the required minimum dimensions and area set forth in Section 8 for the applicable zone. If all such adjacent land so combined is not sufficient to permit the enlargement of said lot to conforming area and dimensions, then the largest lot or parcel which the adjoining common ownership will permit shall be established. By way of example, if all such adjacent land so combined is sufficient to meet the applicable area and dimensional requirements for at least one lot but not for two or more fully conforming

lots, then all such lots shall be combined to create a single lot only."

3. General Laws 1956 (1988 Reenactment) § 45–23–23 reads:

"Previous plats unimpaired.—Nothing herein contained and no ordinance, rule or regulation adopted under this chapter shall impair the validity of any plat legally recorded prior to the effective date of such ordinance, rule or regulation."

4. The provisions of G.L.1956 (1988 Reenactment) § 45–24–2 and § 45–24–3 read in pertinent part:

"45–24–2. Division into districts—Uniformity within districts.—For any and all of the purposes enumerated in § 45–24–1 the city or town council may divide the municipality into districts of a number, shape, and areas it may deem best suited to carry out the purposes of this chapter; and within these districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair, or use of buildings, structures or land."

"45–24–3. General purposes of ordinances.—Regulations shall be made in accordance with a comprehensive plan prepared and adopted in accordance with chapter 22 of this title and designed to lessen congestion in the streets; to secure safety from fire, flood, panic, and other dangers; to promote the public health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. The regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to

Despite the existence of this authority, plaintiffs contend that the town of Barrington cannot prevent the construction of residences on lot Nos. 85 through 99 because section 9–3 of the ordinance, in effect, creates a new subdivision. The plaintiffs correctly cite our holdings in *Noonan v. Zoning Board of Review of Barrington,* 90 R.I. 466, 470, 159 A.2d 606, 608 (1960), and *Kane v. Zoning Board of Review of East Greenwich,* 97 R.I. 152, 155, 196 A.2d 421, 423 (1964), for the proposition that a town is not authorized under chapter 24 of title 45 to regulate the subdivision of land. The subdivision of land is governed by chapter 23 of title 45. *Kane,* 97 R.I. at 155, 196 A.2d at 423.

Our holdings in *Noonan* and *Kane* remain valid; however, plaintiffs' reliance upon them is misplaced. One need only read the definition of "subdivision" in our General Laws to find that such a concept simply does not apply to the present situation. Section 45–23–1(1) reads, "[T]he word 'subdivision', shall mean the division of a lot, tract, or parcel of land into two (2) or more lots, tracts, parcels, or other divisions of land for sale, lease, or other conveyance, or for development, simultaneously or at separate times." The zoning regulations at issue do not require plaintiffs to divide their property; rather the combining of substandard lots involves the concept known as merger, which is a valid zoning mechanism governed by the provisions of chapter 24 of title 45.

Just last year this court had occasion to consider merger provisions similar to the provisions at issue here. *See R.J.E.P. Associates v. Hellewell,* 560 A.2d 353 (R.I. 1989); *see also Redman v. Zoning and Platting Board of Review of Narragansett,* 491 A.2d 998 (R.I.1985). We found that the concept of merger "generally requires the combination of two or more contiguous lots of substandard size that are held in common ownership in order to meet the minimum-square-footage requirements of a particular zoned district. * * * Substandard contiguous lots cannot be devel-

oped as individual nonconforming lots unless the landowner applies for a variance or an exception." 560 A.2d at 355.

The present controversy similarly involves a merger provision in a town zoning ordinance. The Barrington provision requiring the combination of substandard lots was properly enacted pursuant to §§ 45–24–1 through 45–24–3 in order to regulate actual square-footage usage in its R–25 district. The plaintiffs own individual contiguous lots that do not come close to meeting the requirements of the zoned district in which they are situated. Even combined, these lots are barely greater than the 25,000–square–foot–lot area needed to construct a residence in that district.

Finally in order to build on an otherwise substandard lot a landowner must apply for a variance or an exception. *See R.J. E.P. Associates,* 560 A.2d at 355. The plaintiffs sought only to challenge pertinent provisions of the ordinance and did not pursue applications for a variance or an exception. Such a course of action may have provided a remedy if the plaintiffs were able to show that enforcement of a zoning provision would deprive them of all beneficial use of the property. *Id.* This is not, however, the issue to be decided by this court and must be pursued through appropriate channels.

For the foregoing reasons the plaintiffs' appeal is denied and dismissed, and the judgment appealed from is affirmed.

conserving the value of buildings and encouraging the most appropriate use of land throughout the town or municipality."