DECISION
Before this court is the appeal of Bernard and Santina Myers from a decision of the Town of Bristol Zoning Board of Review which denied their application for a variance. Jurisdiction is pursuant to G.L. 1956 (1991 Reenactment) § 45-24-69.
Bernard and Santina Myers (plaintiffs) own property in Bristol on Aaron Lane consisting of three adjacent lots numbered 89, 90, and 93 on Assessor's Plat 61. Lot 90 fronts on Aaron Lane, is irregular in shape, comprises approximately 18,000 square feet and contains a single family dwelling owned by the plaintiffs. Lot 89 is used as a yard for the dwelling and also fronts on Aaron Lane for a total of twenty feet, with side lot lines of one hundred feet and 117 feet for a total of approximately 1,970 square feet. The third lot, number 93, is located behind the others with roughly rectangular dimensions. Each of the two sides measures approximately 150 feet. The lot measures ninety-one feet along the back and ninety-five feet along the portion which abuts lots 89 and 90, that being what is considered the front of that lot. Lot 93 houses an accessory building used as a shed and has no frontage on any street of record.
The plaintiffs request a variance because lots 89 and 93 together do not meet the requirements of the zoning ordinances pertaining to lot width and frontage. As a partial remedy, the plaintiffs seek to take a graduated angular portion of lot 90 and add that land to the long, thin twenty foot wide rectangle that is lot 89, to increase the frontage measurement on Aaron Lane to fifty-nine feet. At the required front yard measurement depth, the proposed lot will measure thirty-two feet wide. At its widest point, the subdivided lot will measure ninety-five feet across, five feet less than the ordinance requires.
At its properly advertised meeting on October 11, 1994, the Bristol Zoning Board of Review heard the Myers' application for a variance regarding the Aaron Lane property. Adam Baron, a Registered Professional Engineer, attested to the dimensions of the lots as they currently exist and to the dimensions under the proposed subdivision plan, as described above. Neighbors Eileen Borges, her father Edmond Borges, and Carmella Malafronte testified as to the character and history of the neighborhood and their opposition to the proposal. Attorney William Dennis also testified on behalf of a group of neighbors, including Mr. and Mrs. Borges and Mrs. Malafronte, who opposed the subdivision of the land and the variance.
The Board made the following findings of fact in a final decision issued October 19, 1994:
 "1. In accordance with Section 22-27 of the Bristol Zoning Ordinance, lots 89, 80 and 93 have merged into one parcel of land.
 2. The demerging of lot 89 will create a substandard, (sic) which is contrary to the provisions of section 22-27 of the Bristol Zoning Ordinance.
 3. The requested relief is should be determined (sic) by the standards set forth in Viti v. Zoning Board of Review of Providence, 92 R.I. 59 (1960). The proposed use of the property is a permitted use in the zone, as specified in section 22-9 of the Bristol Zoning Ordinances. However, denial of the requested relief will not amount to more than a mere inconvenience to the Applicants.
 4. Strict enforcement of the provisions of the Zoning Ordinance would not result in an unnecessary hardship to the Applicants. Such hardship would amount to more than a mere inconvenience, nor would it deny Applicant all beneficial use of the property. (sic)"
On appeal, plaintiffs argue that while the lots may have merged into one parcel for purposes of the zoning ordinance, an appropriate subdivision plan has been submitted and conditionally approved by the Planning Board and that the Zoning Board is without authority to deny the variance they seek. Having obtained such Planning Board approval, the only issue for the Zoning Board, the plaintiffs contend, is whether more than a mere inconvenience would result if the variance were denied.
STANDARD OF REVIEW
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) 45-24-69(D) which provides:
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions; (2) In excess of the authority granted to the zoning board of review by statute or ordinance; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision is supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept to support a conclusion and means more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou, 120 R.I. at 507, 388 A.2d at 824-25).
MERGER and SUBDIVISION
The plaintiffs do not dispute that the three lots have merged and become one parcel under the local zoning ordinance. Zoning Ordinance; Town of Bristol (Ordinance) § 22-27 (b) (1) and (2).[1] Merger generally requires the combination of two or more contiguous lots in common ownership into one undivided parcel where any one lot or portion of one does not meet the requirements established for lot width or area. R.J.E.P.Associates v. Hellewell, 560 A.2d 353, 355 (R.I. 1989).
In order to create a separate parcel of land, a petitioner must apply to the proper authority to subdivide the property according to the general law and local ordinance. G.L. §45-23-26; Ordinance § 21-2. The Bristol Zoning Ordinance provides that the local planning board has authority to approve such a subdivision. That board is authorized and empowered to adopt, modify and amend rules and regulations governing and restricting the platting or other subdivisions or development of land within the town and to control such subdivisions according to such rules and regulations. Bristol Subdivision Regulations, art. I, sec. C; Zoning Ordinance, § 21-1; G.L. § 45-23-26. Zoning Ordinance § 21-2 specifically provides that "any subdivision of land requires that any applicant to the Planning Board for such subdivision shall make a plat thereof and submit the plat to the planning board, which shall approve, or modify and approve or disapprove of such plat within forty-five days."
Where an applicant requires both a variance from the local zoning ordinance and planning board approval, the applicant must first obtain an advisory opinion from the planning board. G.L. §45-23-61(A)(1). "Conditional planning board approval for the first approval stage for the project" may be requested simultaneously. Id. Conditional zoning board relief may then be requested. Id. The applicant must return to the planning board for subsequent required approvals. Id. The local subdivision regulations also provide that a building permit may not be issued for construction within a subdivision without approval of that subdivision by the planning board. Subdivision Regulations, art. I, sec. E.
The record indicates that the plaintiffs have met with the planning board regarding this proposed subdivision. Contained in the record is a letter from the Planning Board to the Zoning Board which states in pertinent part: "The above petition was before the Planning Board for a concept review at our meeting held September 15, 1994. The Planning Board approved the concept contingent on the granting of a lot width variance by the Zoning Board."
Pursuant to § 42-23-35(A), this preapplication meeting or concept review is intended to give the applicant the opportunity to meet with the appropriate officials to gather advice as to the requirements of the approvals process, the pertinent local plans, ordinances, regulations, rules and procedures and standards which may bear upon the proposed development project. Preapplication meetings and discussions are intended for the guidance of the applicant and are not to be considered approval of a project or its elements. § 45-23-35(D). The meeting is intended as an opportunity to gather advice in advance of actual submission of the subdivision application. Id.
When an applicant seeks both a subdivision and a variance, as in the instant case, § 45-23-61 requires the applicant "shall first obtain an advisory recommendation from the planning board, as well as conditional planning board approval . . . which may be simultaneous, then obtain conditional zoning board approval, and then return to the planning board for subsequent required approval(s)." Id. After some preliminary review, the Bristol Planning Board required that subsequent approval of the plaintiffs' petition would be contingent on the zoning board's conditional grant of a variance.
DIMENSIONAL REQUIREMENTS OF THE ORDINANCE
Under the Bristol Zoning Ordinances, no lot may be created unless it conforms to the provisions of the chapter, no portion of any parcel may be used or sold in a manner which diminishes compliance with the code requirements, and no division of any parcel may be made which creates a lot not in compliance with the requirements of the ordinance. Ordinance, §§ 22-3, 22-27(2)(b) and (c). The general dimensional provisions of the Bristol Zoning Ordinance require that a lot in the SR Zone be at minimum 120 feet wide, but a reduction of the requirement is allowed where connections are to be made to a sanitary sewer or public water system, as in this instance, bringing that width requirement to one hundred feet. Ordinance § 22-28. The lot width is determined as the distance between side lot lines, measured at the required front yard depth, which in this zone is thirty-five feet back from street frontage. Ordinance, §§ 22-1, 22-10. At its very widest, the proposed subdivided lot is ninety-five feet wide, five feet less than required. At the front yard depth, however, the land is only thirty-two feet across, sixty-eight feet narrower than the zoning ordinance requires. Given the configuration of lots 89 and 93, the plaintiff must request a variance from the lot width and frontage requirements of the zoning ordinance in order to develop the property.
VITI VARIANCE AND ITS EXCEPTIONS
The plaintiffs' application for such a variance, more accurately described as a deviation, seeks relief from restrictions governing a permitted use, such as area or setback regulations. Gara Realty, Inc. v. Zoning Board of Review of SouthKingstown, 523 A.2d 855 (R.I. 1987); DeStefano v. Zoning Board ofReview of Warwick, 122 R.I. 241, 405 A.2d 1167 (1979). To obtain such relief one "need only demonstrate an adverse impact amounting to more than a mere inconvenience." Viti v. ZoningBoard of Review of Providence, 92 R.I. 59, 166 A.2d 211 (1960); G.L. § 45-24-41(D)(2). More than a mere inconvenience means that there is no other reasonable alternative to enjoy a legally permitted use of one's property. § 45-24-41(D)(2).
An important exception to the Viti doctrine, however, applies to subdivisions made in violation of lot size restrictions. Even if ordinarily treated as a matter for a deviation, a request to relax minimum lot size requirements is not governed by the Viti
doctrine where the lot is subdivided by the applicant after the adoption of the zoning law establishing the required size. Chase, Viti Revisited, or Just What is a Zoning "Deviation"?, 22 Suffolk U.L. Rev. 315, 319-320 (1988). Here, planning board approval for the subdivision as well as zoning board relief for a variance will be required.
The powers of boards of review to grant variances pursuant to the provisions of G.L. 1956, § 45-24-19 are designed to provide a landowner with a means of having his property relieved from the terms of an ordinance with which the property cannot conform.Slawson v. Zoning Board of Review of Barrington, 232 A.2d 362
(R.I. 1967). Variances are not intended as a method of sanctioning conditions which do not conform where those conditions are a result of owners' actions. Id. at 364.
The plaintiffs have owned the Aaron Lane property as one contiguous parcel for more than fifteen years. Any subdivision and subsequent nonconformities of the property would be a result of the owners' deliberate action, not a result of the property's inability to conform with the zoning ordinance.
Finally, petitioners must show that denial of such petition would result in more than a mere inconvenience. Plaintiffs citeGara Realty v. Zoning Board of Review of South Kingstown for the proposition that the enforcement of an ordinance which effectively operates to preclude one from building a house is more than a mere inconvenience as a matter of law. 523 A.2d 855
(R.I. 1987). In Gara Realty, however, the plaintiff owned only one substandard lot on which he sought to install a sewage disposal system as part of building a single family dwelling. Id.
at 856. The single lot was located closer to an intertidal waterway than is allowed under the local zoning ordinances for such an installation. Id. Because the home could not be built without the accompanying means of sewage disposal and the local ordinance barred placement of the system anywhere on the premises, enforcement of the ordinance effectively precluded petitioner from building a house. Id. at 858.
Unlike the petitioners in Gara Realty, who could not build on their single lot without a variance, plaintiffs here own a parcel of land which already contains a house. The record reflects testimony of Mr. Myers, explaining his intent to build a second house, a retirement home, on the property:
 "Mr. Myers: My intention would be . . . is to sell it, so it would be a private ownership of the front lot . . . the front house, my present house. I'm just interested in a smaller all on one floor with a couple of bedrooms." (Tr. at 32.)
 "Mr. Myers: I plan to build a single family residence in line with the structures there now. Slightly smaller than the one I have there now." (Tr. at 9.)
 "Mr. Crocker: Is it your claim, at this point before the board that without the dimensional variance that you request that you'll be denied all beneficial use of the subdivided lot 89 and 93?
 Mr. Myers: That correct, yeah." (sic) (Tr. at 10-11.)
The above evidence of record demonstrates that denial of a variance will not result in more than a mere inconvenience. The Myers will still have their home and full use of the Aaron Lane property as it has been used for many years. Allegations of denial of all beneficial use cannot be viewed as substantial evidence of "more than a mere inconvenience."
After careful review of the whole record, this Court finds that the zoning board's decision which denied the variance petition was not clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, and was not arbitrary or capricious or characterized by an abuse or unwarranted exercise of discretion. The decision was not made upon unlawful procedure, was not in violation of constitutional, statutory, or ordinance provisions or in excess of the board's authority, and was not affected by other error of law.
Accordingly, the decision of the Bristol Zoning Board is affirmed.
Counsel is directed to prepare the appropriate order.
[1] Citations are to then-pertinent Bristol Zoning Amendment, adopted June 28, 1991, which is no longer in effect. Current Zoning Ordinance No. 1994-14, as amended November 16, 1994, renumbers pertinent ordinances.