[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal from a decision of the Warren Zoning Board of Review (Board), brought by Appellants, Donald and Carol Smith (Smiths or Appellants). In addition to the Board, Fredrick Pise (Pise), owner of the subject property, and Daniel Francis, Jr. (Francis), Pise's son-in-law, are Appellees in this action. Appellants are seeking to reverse the action of the Board in granting Francis a special use permit to build a single-family dwelling on the vacant lot which does not meet minimum area requirements. Jurisdiction is pursuant to G.L. 1956 §45-24-69.
 FACTS AND TRAVEL
The subject property is located in the Town of Warren and is comprised of two adjacent lots of record, both of which Pise owns. On one lot (Assessor's Plat 7, Lot 85) Pise has a single family dwelling. The other lot (Assessor's Plat 7, Lot 23) is currently vacant land. Both lots have a land area of approximately 5,371 square feet and are contained in an R-10 zone. Lots in the R-10 zone are required to have 10,000 square feet in order to be buildable lots. Under Section 32-82 of the Warren Zoning Ordinance, "where adjacent land is in the same ownership, such lot shall be combined with adjacent land to form a lot of the required dimensions and area, or to decrease the degree of non-conformity where the required area and dimensions cannot be achieved." Thus, the two lots that Pise owns were merged automatically under the ordinance.
In 2001, Pise filed an application (#01-49) for a special use permit with the Board. The copy provided in the record does not contain the exact date on which the application was submitted. The application sought to undo the merger of the lots and relief from the minimum area requirements under the applicable sections of the zoning ordinance. On January 16, 2002, the Board voted and denied the application, citing incompatibility with the Comprehensive Community Plan. Mr. Pise did not appeal the Board's decision.
Subsequently, a second application for similar relief was submitted on February 19, 2003. On the application, Francis is listed as the applicant, and Pise is listed as owner of the property. Again, relief was sought from the merger provision to enable construction of a single-family dwelling on the vacant lot (#23).
The Board held a public hearing at which the Appellants appeared and objected. According to the hearing transcript, Mr. Smith stated that he had "nothing personal" with the applicants but was concerned that the proposed house size was too large and that it would create a bad precedent to start allowing such development on undersized lots in Warren. Another neighbor, Mr. Fitzgerald, noted that the area was zoned R-10 for a reason, likely to maintain green space in the town, and agreed with the objection to the proposed development.
Francis submitted a petition signed by twenty-one neighbors who approved of the project, several of whom appeared at the hearing and spoke in support of the application. The Board heard testimony from Francis and from a real estate expert, Peter M. Scotti (Scotti), who also submitted a report in support of the application. The report appears to have been submitted and is part of the written record, but was not read into evidence before the Board because Scotti testified and answered questions. The Warrren Planning Board advised the Board that the application met the Comprehensive Plan, but did not explain why.
The Board approved the application and granted the special use permit on March 19, 2003. The Board's decision outlined the standard for granting a special use permit, gave other pertinent information regarding the property and application, and outlined the evidence presented to the Board, which it used in rendering its decision. In addition to reiterating that the property was located in an R-10 zone, the Board made a finding that "[s]pecific evidence was presented" regarding "subject development meets coverage, setback, height and off-street parking requirements"; a "majority of neighboring properties . . . are non-conforming with regard to lot size and density"; "[t]he proposed development would not create a neighborhood nuisance . . . and that it is "compatible with the Warren Comprehensive Plan and would serve the public welfare and convenience;" the proposal had "adequate provisions for water, sewer, and fire protection without an increased the burden on the infrastructure"; and "[t]he proposed development would have no negative impact on the natural environment or any historic or cultural resources." (Zoning Bd. Decision at 2). The Board also recited that the standards for a special use permit and relief from the merger provisions were met. The instant appeal followed.
 STANDARD OF REVIEW
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d), which provides that:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may "not substitute [his or her] judgment for that of the zoning board if [he or she] conscientiously find[s] that the board's decision was supported by substantial evidence." Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Reviewof North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswellv. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). Thus, the reviewing court must examine the record to determine whether competent evidence exists to support the Board's decision.Compare New England Naturist Assoc., Inc. v. George, 648 A.2d 370, 371
(R.I. 1994) (quashing Superior Court judgment based on erroneous ruling), with von Bernuth v. Zoning Bd. of Review of New Shoreham,770 A.2d 396, 401-02 (R.I. 2001) (denying relief granted by zoning board based on lack of competent evidence and remanding to Superior Court). "[T]he trial justice [has] the authority to remand a case to the zoning board of review for further proceedings" but such action "should be based upon a genuine defect in proceedings in the first instance. . . ." RogerWilliams Coll. v. Gallison, 572 A.2d 61, 62-634 (R.I. 1990).
 NOTICE TO NEIGHBORING LANDOWNERS
As a threshold issue, Appellants argue that Appellees (through the Board) failed to properly notify landowners within the required 200 foot radius of the subject property pursuant to G.L. 1956 § 45-24-42. According to Appellants, the Board lacked jurisdiction to decide the application (#03-11) because the Board failed to provide actual notice of the hearing to the owners of two properties. Appellants state that the owners whom Francis listed on his application were not, in fact, the current owners of those properties. Appellants add that the names listed in the Warren land evidence records are different than the names listed on the list of abutters that accompanied the application.
Appellees argue that Appellants have failed to show procedural error in notice to neighboring landowners because Appellants have not offered any competent evidence that the required persons were not properly noticed. Appellees contend that the names used to provide notice were consistent with those listed in the current real estate tax assessment records as required by § 45-24-53(c)(2). Appellees posit that Appellants are using information from the deeds and land evidence records, which according to the Appellants, do not properly identify the parties required to be noticed. Appellees argue that Appellants have waived their right to object to any deficiencies in notice by actual attendance at the hearing and because Appellants did not notice new or additional parties to their appeal as required under § 45-24-69.1, but rather utilized the list of abutters filed by the applicant, Francis, which Appellants now contend was inaccurate.
The Board derives its power from § 45-24-57(v), which delegates to the Board the power to authorize special use permits. Notice of a zoning board hearing is required under § 45-24-42, which provides that notice of hearings for special permit applications must conform to the requirements set forth in § 45-24-53. Indeed such notice is a prerequisite to the zoning board's jurisdiction. Ryan v. Zoning Bd. of Town of New Shoreham,656 A.2d 612, 615 (R.I. 1995) (citing Zeilstra v. Barrington Zoning Bd.of Review, 417 A.2d 303, 307 (R.I. 1980)). Section 45-24-53(c)(2) provides that "notice shall be sent . . . to the last known address of the owners, as shown on the current real estate tax assessment records of the city or town in which the property is located." (Emphasis added.) The statutory scheme does not require greater inquiry into deed information or land evidence records. The statutory language is clear as to the source of the information to be used. In this case, the names that Francis provided in his application complied with § 45-24-53, and as such, was proper. Appellants have not argued that the wrong tax assessor's records were used, but merely that the persons noticed were not the true owners as evidenced by the deed information. This Court finds the notice of the zoning board hearing did not constitute unlawful procedure and did not substantially prejudice the Appellants' due process rights. Thus, the Board had jurisdiction to hear and decide the special use permit application.
 ADMINISTRATIVE FINALITY
Appellants argue that the doctrine of administrative finality bars the second application (#03-11), which sought the same relief without showing a change in material circumstances in the time between the two applications. Appellants point to a change from 1,024 square feet to 1,030 square feet in building size and from 19% to 20% lot coverage, urging that such changes are not substantial or material. Appellants also contend that no evidence of external changes in the neighborhood was presented. Lastly, Appellants argue that the Board failed to articulate such changed circumstances in its decision.
Appellees argue that administrative finality is inapplicable because the application was filed more than one year after the initial application and the plan presented in the application was materially different. Appellees point to different setback dimensions, notably increasing the setback from a neighbor's lot in conformance with the Board's request. Appellees also state that a real estate expert testified at the hearing. In addition, Francis submitted a petition supporting the application and signed by twenty-one neighbors with his application for relief.
"Where a zoning board hears an application for relief and denies it, the doctrine of administrative finality bars a subsequent application for the same relief absent a showing of a change in material circumstances in the time intervening between the two applications." Audette v. Coletti,539 A.2d 520, 521-22 (R.I. 1988) (citing Marks v. Zoning Bd. of Review ofProvidence, 98 R.I. 405, 203 A.2d 761 (1964)). Our Supreme Court has stated that "[t]his rule places a burden on the applicant to identify the substantial changes since the prior application." Johnston AmbulatorySurgical Assocs. v. Nolan, 755 A.2d 799, 811 (R.I. 2000). The Supreme Court has also examined this change in material circumstances:
 "What constitutes a material change will depend on the context of the particular administrative scheme and the relief sought by the applicant and should be determined with reference to the statutes, regulations, and case law that govern the specific field. The changed circumstances could be internal to the application, as when an applicant seeks the same relief but makes important changes in the application to address the concerns expressed in the denial of its earlier application. Or, external circumstances could have changed, as when an applicant for a zoning exception demonstrates that the essential nature of land use in the immediate vicinity has changed since the previous application. Finally, there is a burden on the administrative decision-maker to articulate in its decision the specific materially changed circumstances that warrant reversal of an earlier denial of the relief sought." Id. (Emphasis added.)
In the Johnston Ambulatory case, one altered external factor was held insufficient to constitute substantial or material change. Id. at 812 n. 4. "The determination of whether circumstances have materially or substantially changed sufficiently to warrant reversal of an earlier decision is a finding that must be made in the first instance by the administrative decision-maker and not by [the Supreme] Court." Id. at 812. When the administrative agency fails to make an explicit finding that circumstances have materially changed, "it cannot be said that the trial justice has substituted his or her judgment for that of the administrative decision-maker" if the judge reaches a conclusion about material change. Id. at 813.
In this case the two applications are similar, but the question arises as to whether the second application was materially changed so as to preclude the application from being reconsidered. The doctrine of administrative finality would bar the application. The standard set forth in Johnston Ambulatory requires that the zoning board decide whether the second application materially changed. Here, the zoning board explicitly outlined the numerous factors and pieces of evidence it considered in arriving at its decision on the second application. The second application itself proposed a building of different dimensions than the original application. For example, the dimensions of the original proposed house were 32 feet by 32 feet, while the second application proposed dimensions of 34 feet by 28 feet with an extension to 34 feet for the garage.
The Board in this case did not explicitly state that it found the second application materially different. Under Johnston Ambulatory, however, it can be left to the trial judge to determine whether the second application is materially different when the zoning board fails to do so. One could presume, in deference to the Board, that the Board would not have granted the application if it had not found some material or substantial change in the application. Martone v.Johnston Sch. Comm., 824 A.2d 426, 431 (R.I. 2003) (according board's judgment great weight and deference as long as not clearly erroneous). Furthermore, the presumption that an administrative board's "official actions were properly performed . . . carries with it an assumption that the board found that the facts prerequisite to the grant of an exception existed and that it applied correct standards in reaching its conclusion." Wyss v. Zoning Bd. of Review of City ofWarwick, 99 R.I. 562, 565, 209 A.2d 225, 227 (1965). Indeed, one could further presume that the Board would not have held a hearing on the second application if the application was barred.
Webster's Dictionary (10th ed. 2001) defines "material" as "having real importance or great consequence" and "relating to or concerned with physical rather than spiritual or intellectual things." "Material" is synonymous with "relevant." Though Appellants argue the changes were insubstantial or immaterial, a change in the footprint of the structure, its dimensions, and the setback amounts satisfy this Court of a material change.
The Board notes the testimony of Francis and a real estate expert, Mr. Scotti, as well as a petition signed by 21 neighbors who approve of the proposed development. The Board members actually visited the site in question. During the hearing, the Zoning Board requested that the side yard setback configuration be changed, and Francis agreed to comply with this request. As the Johnston Ambulatory Court stated, an internal change to comply with the request of the board would constitute a material change. 755 A.2d at 811. By the Board Chairman's own admission, Francis submitted much more information with the second application. (Tr. at 57.) Additionally, the testimony of a real estate expert addressed reasons the Board had provided in the denial of the original application, such as incompatibility with the Comprehensive Community Plan and nonconformance with the neighboring properties. Accordingly, because the Board did expressly recognize an increase in information provided, this Court finds that this constituted a material change in the application. Thus, this Court finds that the doctrine of administrative finality does not bar the second application (#03-11).
 MERGER AND DIVISION OF ADJACENT LOTS
Appellants aver that the Zoning Board cannot unmerge property via a special use permit. In addition, Appellants argue that undoing a merger is concerned with dimensional aspects of the property rather than conditionally permitted uses. The Appellants posit that the Planning Board, not the Zoning Board, has jurisdiction over subdivision matters, of which undoing a merger is one. Appellants argue that either Francis or Pise was required to first obtain conditional approval of the Planning Board prior to seeking a special use permit with the Zoning Board, but failed to do so. As such, Appellants argue the Board had no authority to act. In the alternative, Appellants argue that even if the Board did have authority, Francis would be required to obtain a dimensional variance because undoing the merger results in two undersized lots. The Appellants seek to have the Board's decision overturned or, in the alternative, remanded to the Board in order to allow Appellees to seek dimensional relief.
Appellees argue that merger of the two lots was administrative in nature and did not involve a change in the actual platted boundary lines. Appellees argue on policy grounds that if Appellants' logic was applied, then the initial merger of the lots would not have been effective without Planning Board approval. Appellees state that the initial merger did not require Planning Board approval; otherwise, if it did, there would be no need for zoning in this application. Appellees contend that cities and towns regulate substandard lots of record through their zoning ordinances as mandated by G.L. § 45-24-38. Additionally, Appellees argue that the zoning ordinance expressly permits the dimensions and setbacks that Francis requested in his application, citing Section 32-82 of the Warren Zoning Ordinance. Appellees note that the size of the subject lot permits six foot side yard setbacks under Section 32-82. Accordingly, Appellees argue no dimensional variance was needed and the lots were simply substandard lots of record, which satisfied all dimensional requirements.
Merger is a function of zoning laws and ordinances, which occurs when substandard lots are combined. Section45-24-38 (authorizing local zoning ordinances to govern merger of substandard lots); Brum v. Conley, 572 A.2d 1332,1334 (R.I. 1990). Merger occurs by operation of law. The purpose of merger provisions in zoning ordinances is "to decrease congestion in the streets and to prevent overcrowding of land by limiting the number of new dwellings built in the residential districts." Brum,572 A.2d at 1334; § 45-24-30 (providing general purposes of ordinances). Our Supreme Court has stated that:
 "merger `generally requires the combination of two or more contiguous lots of substandard size that are held in common ownership in order to meet the minimum-square-footage requirements of a particular zoned district. . . . Substandard contiguous lots cannot be developed as individual nonconforming lots unless the landowner applies for a variance or an exception.'" McKendall v. Town of Barrington, 571 A.2d 565, 567 (R.I. 1990) (quoting R.J.E.P. Assocs. v. Hellewell, 560 A.2d 353, 355 (R.I. 1989)).
"[I]n order to build on an otherwise substandard lot a landowner must apply for a variance or an exception." Id.
The Warren Zoning Ordinance, Section 32-82, provides for merger of substandard lots which are under the same ownership:
 "where adjacent land is in the same ownership, such lot shall be combined with adjacent land to form a lot of the required dimensions and area, or to decrease the degree of non-conformity where the required area and dimensions cannot be achieved. Substandard lots of record, in the R-10 and R-6 Districts, which after being subject to the above requirements, deviate by more than twenty five percent (25%) in the minimum lot area, shall have two side yards each having a setback of not less than ten (10) percent of the frontage of the lot, or six (6) feet, whichever is greater. . . . The merger requirement shall apply to all adjacent land under the same ownership whether improved or unimproved. . . ." (Emphasis added.)
The above provision of the zoning ordinance requires merger of lots that are adjacent and under the same ownership. The allowance of a six foot setback is only applicable to lots which still deviate by twenty-five percent after being merged, not to all lots in R-10 districts. The ordinance also requires the merger of adjacent lots no matter whether improved or unimproved, as long as the lots are under the same ownership.
Additionally, Section 32-84 provides that "[n]either the area nor the frontage of a lot may be reduced or diminished so that the yards or total lot area shall be less than the minimum requirements prescribed in [the] ordinance." Section 32-85 of the zoning ordinances provides that "[r]elief from the merger provisions may be granted by the Zoning Board of Review as special use permit. . . ." Said section only allows a single-family dwelling following the issuance of a special use permit on substandard lots that cannot be merged under Section 32-82. Our Supreme Court has stated that:
 "Merger provisions frequently contain exceptions whereby a lot that is smaller than the minimum zoning requirements will be exempted from the merger rule if it is a lot of record prior to the effective date of the zoning ordinance. Such an exception allows the landowner to develop a substandard lot only if the lot remains isolated and was under single ownership at the time the zoning ordinance was adopted." Skelley v. Zoning Bd. of Review of Town of S. Kingstown, 569 A.2d 1054 (R.I. 1990) (citing R.J.E.P. Assocs. v. Hellewell, 560 A.2d 353, 356 (R.I. 1989)).
However, "if the landowner owns any adjacent lots that, if combined, would satisfy the squarefootage requirements, then the landowner is not entitled to the exception [from the merger provisions] and the landowner must merge the lots to form a single parcel." Brum,572 A.2d at 1335-36 (citing R.J.E.P. Assocs. v.Hellewell, 560 A.2d 353, 356 (R.I. 1989)). An "owner is held to be on notice of the applicable zoning provisions and, if so provided for in the ordinance, should expect a merger of substandard parcels of land." Id. at 1336.
In the case at bar, the two adjacent lots, both owned by Pise, have merged by operation of law under the zoning ordinance. Both lots measure approximately 5,371 square feet, totaling 10,742 square feet once they are merged. The lot is located in an R-10 district, which requires 10,000 square foot lots as the minimum allowable size on which to build upon. The policy behind the zoning ordinance is to "to form a lot of the required dimensions and area, or to decrease the degree of non-conformity" as stated in Section 32-82. Merging the lots creates a single conforming lot that exceeds the minimum required area by only about 742 square feet. Had the two lots not been owned by Pise, they would have remained two substandard, legally non-conforming lots of record. The ordinance provisions require merger, which is applicable under the facts presented. Accordingly, this Court finds that the lots in question are merged into a single conforming lot under the applicable Warren Zoning Ordinances.
The question then becomes whether a special use permit was appropriate to divide the lots in order to effect relief from the merger provisions. As stated, Section 32-85 empowers the Board to grant relief from the merger provisions by special use permit.[1] The application for relief from merger by way of a special use permit was proper.
Next the Appellants urge that in order to separate the lots back to their original nonconforming dimensions subdivision would be required. Under the Town of Warren Planning Board Rules and Regulations Section I-4, a division of land is synonymous with subdivision. Under the same section, a subdivision is defined as "[t]he division or re-division, of a lot, tract or parcel of land into two or more lots, tracts, or parcels."[2]
Additionally, Section I-4 defines "Administrative Subdivision" as "[r]e-subdivision of existing lots which yields no additional lots for development, and involves no creation or extension of streets. Such re-subdivision shall only involve divisions, mergers, mergers and division, or adjustments of boundaries of existing lots." There is no question that the subdivision of land is subject to the authority of the Planning Board. G.L. 1956 § 45-23-51; Town of Coventry v. Glickman, 429 A.2d 440,443 (R.I. 1981) (recognizing authority of local planning boards to regulate subdivision of land). In this case, the Warren Planning Board has already granted preliminary approval to the project, stating in its meeting minutes from February 24, 2002 that motion was made and carried to "advise the Zoning Board that the above application meets the Comprehensive Plan and has no adverse planning issues." Accordingly, the decision to allow the relief from merger through a division was left to the Zoning Board.
It should also be noted that Section 32-30.1 of the ordinance does not allow for an applicant to seek both a special use permit and a dimensional variance in residential districts. This is not an issue, however, because Section 32-82 provides for reduced side setback and yard dimensions for lots which fail to conform by more than twenty-five percent. Section 32-82 provides:
 "Substandard lots of record, in the R-10 and R-6 Districts, which after being subject to the [merger] requirements, deviate by more than twenty five percent (25%) in the minimum lot area, shall have two side yards each having a setback of not less than ten (10) percent of the frontage of the lot, or six (6) feet, whichever is greater, provided that any side yard abutting on a street shall have a setback of not less than fifteen (15) feet."
Once the lots are divided (after previously having been merged) the lots measure their original 5,371 square feet. This area deviates by more than twenty-five percent from the required 10,000 square foot minimum in an R-10 zone. Accordingly, Francis' proposal including side yards of six and ten feet is proper. This Court, therefore, finds that the merged lots are properly divided and the smaller side yard dimensions contained in the proposed development application are permissible under the ordinance.
 ZONING BOARD DECISION
Appellants argue that the Board's decision to grant the special use permit was not supported by substantial evidence. In addition, Appellants contend that the purported real estate expert, Mr. Scotti, gave opinions that were predicated upon legally insufficient facts, and should be disregarded. Finally, the Appellants argue that the Board's decision should be reversed because its decision does not set forth adequate findings of fact.
Appellees argue that the Board's decision was, in fact, supported by substantial evidence, which was provided in the record and was uncontroverted by the Appellants. Appellees point to specific evidence which they believe meets the substantial evidence threshold. In doing so, Appellees also contend that the Board's findings of fact were based on such evidence, and as such, were sufficient to justify the grant of the special use permit.
Under the Warren Zoning Ordinances, the standard for review of a special use permit is found in Sections 32-30 and 32-31(B). In order for the Board to grant a special use permit, Section 32-30 provides the following standards:
 "A. They will be compatible with the neighboring land uses;
 B. They will not create a nuisance or a hazard in the neighborhood.
 C. They will be compatible with the Comprehensive Community Plan; and
 D. The public convenience and welfare will be served."
In addition, for special use permits dealing with merger of substandard lots Section 32-31(B) adds the following criteria:
 "1. The resulting development will have adequate provisions for water service, wastewater disposal and fire protection;
 2. It will not result in an increased burden on community infrastructure and services; and
 3. It will not have a negative impact on the natural environment or on any historic or cultural resource."
In addition to the requirements set forth in G.L. § 45-24-69(d), the Board's decision must be supported by substantial evidence. Apostolou,120 R.I. at 507, 388 A.2d at 825. The standard is not whether the evidence presented is uncontroverted, as Appellees suggest.
In this case, the Board's decision recites the above standards which the ordinance mandates. However, little, if any, detail is provided as to what evidence the Board found in support of each of the above requirements. Instead, the Board lists Francis and Scotti as witnesses, and speaks generally of the evidence presented which the Board used in arriving at its decision. The findings of fact and conclusions of law stated in the Board's decision are generic, if not boilerplate, and could relate to any property. As stated, the Board must find substantial evidence, which is defined as an "amount more than a scintilla but less than a preponderance." Lischio, 818 A.2d at 690 n. 5 (quoting Caswell v.George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). Additionally, a zoning board "must set forth in its decision findings of fact and reasons for the action taken." Irish P'ship v. Rommel,518 A.2d 356, 358 (R.I. 1986). Our Supreme Court has further noted that "[f]indings made by a zoning board `must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany.'" Sciacca v. Caruso,769 A.2d 578, 585 (R.I. 2001) (quoting Irish P'ship v. Rommel,518 A.2d 356, 358-59 (R.I. 1986)).
The first three findings of fact that the Board made were a recitation of what Francis was seeking and identified the property by plat, the zone the property was located in, and the provision of the ordinance Francis was arguing under. Specifically, the Board made the following findings:
 "1. The applicant is seeking a Special Use Permit, relief of merger, to construct a single family home on Assessor's Plat 7, Lot 23, Bradford Street in the Town of Warren, Rhode Island.
2. The property is located in an R-10 zone.
 3. The applicant is seeking relief from merger under Article XIV § 32-85 of the Warren Zoning Code to have the subject lot recognized as a single substandard lot of record."
Such statements do not amount to actual evidence or findings. Anyone who read the application would know the same factual details.
The fourth alleged finding of fact offered the "specific evidence 
presented by the applicant and his expert witness." It contains the following five subsequent statements:
 "A. The subject development meets coverage, setback, height and off-street parking requirements of the Warren Zoning Code.
 B. The vast majority of neighboring properties in the neighborhood are non-conforming with regard to lot size and density, as the neighborhood was developed prior to current zoning requirements.
 C. The proposed development would not create a neighborhood nuisance or hazard and that it is compatible with the Warren Comprehensive Plan and would serve the public welfare and convenience.
 D. The proposed development would have adequate provisions for water, sewer and fire protection without an increased burden on the infrastructure.
 E. The proposed development would have no negative impact on the natural environment or any historic or cultural resources."
The majority of these "findings" simply mirror the language of the standards for granting the Special Use Permit and relief from merger. The Board's decision states that the proposed development met the standards for a Special Use Permit because:
"A. It is compatible with neighboring land uses.
 B. It will not create a nuisance or hazard in the neighborhood.
 C. It will be compatible with the Comprehensive Community Plan.
 D. The public convenience and welfare will be served."
The Board continues by reciting that the proposed development also meets the Special Use Permit standards for granting relief from merger, finding that:
 "A. The development will have adequate provisions for water service, waste water disposal and fire protection.
 B. It will not result in an increased burden on community infrastructure and services.
 C. It will not have a negative impact on the natural environment or on any historic or cultural resource."
Such findings and conclusions amount to boilerplate assertions, unsupported by actual evidentiary findings. They are mere recitations of the standards that the statutes and local ordinances impose. There is no mention of what evidence was presented which led to the conclusions stated in the decision or the manner in which the Board applied such evidence to justify its decision. For example, in the initial denial of the original application by Pise for dividing the lot and constructing a single-family home, the Board stated that such relief would violate the Comprehensive Plan. However, in this second decision on the application by Francis, which sought the same relief, the Board found that said development was "compatible with the Warren Comprehensive Plan." There is no other statement of substantial evidence that supports such a conclusion (as well as a change in the position of the Board in one year's time) anywhere in the Board's written decision.
This Court finds that such a seeming contradiction rises to the level of being arbitrary and capricious. Additionally, this Court finds that due to the lack of actual evidence set forth in the decision, the Board's decision lacked substantial evidence, and instead was merely a recitation of hollow conclusions. As such, this Court finds that the Board's decision granting the special use permit to Francis violated § 45-24-69(d). The decision of the Warren Zoning Board on Francis' application (#03-11) is hereby remanded for more definite findings.[3] The Board shall make findings on (1) how the proposed development would be compatible with neighboring land uses, (2) how and why it will not create a nuisance or hazard in the neighborhood, (3) how it is compatible with the Comprehensive Community Plan (especially in light of the Board's previous denial of a nearly identical application by Pise on this ground), and (4) how the public convenience and welfare are served. The Board shall also make findings about (1) how the development will not result in an increased burden on community infrastructure and services and (2) how the development will not have a negative impact on the natural environment or any historical or cultural resource. Once said findings have been adequately made, this Court may review the Board's decision to determine whether it conforms with the statutory requirements of § 45-24-69(d).
 CONCLUSION
For the reasons stated above, this Court finds that notice provisions were complied with, the application was not barred by administrative finality, and the lots, once merged by operation of law, are properly divided by special use permit under the authority of the Board. However, this Court finds that the Board's findings of fact were inadequate, amounting to unsupported conclusions, which do not provide this Court with the information necessary to determine whether the Board acted in violation of its statutorily defined power. Accordingly, this Court hereby remands the matter to the Warren Zoning Board for more adequate findings of fact consistent with this opinion. The Board shall make actual findings that support its otherwise insufficient conclusions relating to the standards for both a Special Use Permit and relief from merger that the Board provided in its written decision. This Court shall retain jurisdiction over this matter.
Counsel shall submit the appropriate order for judgment.
[1] Section 32-85 provides that "[r]elief from the merger requirements of this article may be granted by the Zoning Board of Review as special use permit under the provisions of Article V."
[2] This definition is consistent with the definition of subdivision found in G.L. 1956 § 45-23-32(51).
[3] This Court has the authority to remand a case to the zoning board for further proceedings under § 45-24-69(d). A remand is not intended to allow remonstrants another opportunity to present their case where evidence was inadequately presented. See Roger Williams Coll. v.Gallison, 572 A.2d 61 (R.I. 1990).