DECISION
Before this Court is an appeal from a Decision of the Zoning Board of Review for the City of Cranston (the Board) denying an Application for a Dimensional Variance submitted by Appellant Aley Jaden Cameron, LLC (the Appellant). The Appellant asserts that it met its burden of proving the applicable standard for dimensional relief, and that the Board's decision was not based upon the substantial evidence in the record. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
On May 31, 2006, Everett Wilmarth, Jr., in his capacity as the Executor of the Estate of Margaret Evelyn Wilmarth, conveyed two contiguous parcels of property on Shean Street in the City of Cranston to Richard A. Rego (Mr. Rego). See Executor's Deed. The properties are described as Lots 1894 and 1895 on Tax Assessor's Plat No. 17. SeeTranscript (Tr. I), dated *Page 2 
September 13, 2007, at 5. Fifteen days later, Mr. Rego conveyed the same properties to the Appellant. See Warranty Deed, dated June 15, 2006. Mr. Rego is the sole member of Appellant Aley Jaden Cameron, LLC. See Tr.I at 5.
Currently, Lot No. 1895 contains a single-family dwelling, while Lot No. 1894 is vacant. See id. The properties are located in an A-6 zone. The minimum lot area in an A-6 zone is 6000 square feet and the minimum frontage is sixty feet. See Chapter 17.20.120 of the Zoning Ordinance for the City of Cranston (the Ordinance), entitled Schedule of Intensity Regulations. Lots 1894 and 1895 each contain only 5000 square feet of area and fifty feet of frontage. See Tr. I at 6. Consequently, both properties are substandard lots of record.
On July 6, 2006, the Appellant submitted an Application to the Board for a Dimensional Variance in order to construct a single-family residence on Lot No. 1894. See Application at 1. Specifically, the Appellant sought relief from the area and frontage requirements of the Ordinance. See id. A duly noticed hearing was conducted on September 13, 2006, and continued to November 8, 2006.[1]
Before taking any testimony, the Board acknowledged receiving numerous letters of objection to the Application. Transcript (Tr. II), dated November 8, 2006, at 10. The Board entered these letters into the record. See id. The Board's Chair also read into the record a Report from the City's Planning Board. Tr. I at 3-5.
In that Report, the Planning Board made the following findings: the Application did not violate density requirements; within a 400-foot radius of the Appellant's lots are sixty-six single family dwellings of which (a) twenty-two are on lots of 5000 square feet or less, (b) twenty-four have frontages of fifty feet or less, and, (c) while the unmerging of the two lots would result in a *Page 3 
side-yard setback of 5.1 feet rather than the required eight feet, thirty other residence within the radius have similar or smaller setbacks.
The Planning Board then concluded that the Application was consistent with, and would not impair, the intent or purpose of the Comprehensive Plan or the Zoning Ordinance, and that it would not alter the general character of the neighborhood. Accordingly, the Planning Board recommended approval of the Application. However, the Planning Board conditioned its recommended approval upon the Appellant submitting sufficient evidence to the Board in order to satisfy the variance requirements set forth in § 45-24-41.
Mr. Rego testified on behalf of the Appellant. See Tr. I at 5-12, andTr. II at 4-10. Mr. Rego acknowledged that the Appellant was attempting "to create two substandard legal, nonconforming lots of record. . . ."Tr. II at 5. He also testified that his sister was living in the existing residence, and that his brother was interested in living in the new house. Tr. I at 8-9. Mr. Rego later testified that "Eventually one day [his sister] will purchase" the residence in which she resides.Tr. II at 9. He stated that a denial of the Application would amount to more than a mere inconvenience because "[t]he lot would be useless to me at that point[,]" and that he would have no reasonable use of the property. Tr. I at 8, and Tr. II at 8. He also stated that he believed that the proposal would be in harmony and in character with the neighborhood. Tr. I at 8. The Appellant did not present any experts to testify in support of the Application.
Several neighbors then testified against the Application. See Tr.II at 10-24. Sandra Terry Dobson believed that the sole purpose of the Application was to seek financial gain. Id. at 11-12. Most of the subsequent witnesses agreed with this allegation. Ms. Dobson further testified that Shean Street is a very short and often congested road, particularly when the nearby athletic field is being used. Tr. II at 12. Valerie Schuele was concerned that the proposed *Page 4 
structure might cause flooding on her property similar to what had occurred when another nearby house was built. Id. at 16. Tina Horbert testified about her concern regarding overcrowding. Id. at 17. Frank Pagliarini criticized the proposed house as having "one of the poorest designs I've ever seen." Id. at 20. In addition to having traffic and parking concerns, Mr. Pagliarini also feared that the development would lower property values. Id. Frances Latimer was worried that the property would be rented out to individuals who would not maintain its appearance and thereby change the character of the neighborhood. Id. at 23. Shannon Terry testified that the proposed two-story "shotgun ranch" did not conform to other houses in the neighborhood. Id. at 24.
Thereafter, the hearing concluded. A Motion to Approve the Application failed to carry by a vote of three to two. See Decision at 1.[2]
Consequently, the Application was denied. See id. The Appellant's appeal is now before this Court.
 II Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d). Section § 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: *Page 5 
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina College v. ZoningBd. of Review of City of Newport, 594 A.2d 878, 880 (R.I. 1991) (quotingDeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979)). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. ofReview of North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647
(R.I. 1981)).
In conducting its review, the trial justice "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v. Church Community HousingCorp., 672 A.2d 453, 454 (R.I. 1996) (quoting § 45-24-69(d)). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v. Zoning Bd. of Review of East Providence,93 R.I. 447, 449, 176 A.2d 726, 728 (1962). "This deferential standard of review, however, is contingent upon sufficient findings of fact by the zoning board." Kaveny v. Town of *Page 6 Cumberland Zoning Board of Review, 875 A.2d 1, 8 (R.I. 2005); see alsoJCM, LLC v. Town of Cumberland Zoning Board of Review, 889 A.2d 169, 177
(R.I. 2005) (stating and citing same).
A board's findings, coupled with its reasons for the actions taken, are essential to proper judicial review of any appealed matters.Bernuth v. Zoning Board of Review of New Shoreham, 770 A.2d 396, 401
(R.I. 2001). "Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany." Irish Partnership v.Rommel, 518 A.2d 356, 358-59 (R.I. 1986). Therefore, where a board has failed to state its findings of fact, "the Court will not search the record for supporting evidence or decide for itself what is proper in the circumstances." Kaveny, 875 A.2d at 8 (citations omitted); see alsoJCM, 889 A.2d at 176 n. 7 (commenting courts will not scour record for support of board's "laconic" decision). Furthermore, an administrative decision may be vacated if it is clearly erroneous in view of the reliable, probative and substantial evidence contained in the whole record. Von Bernuth v. Zoning Bd. of Review of Town of NewShoreham, 770 A.2d 396, 399 (R.I. 2001); see also Costa v. Registrar ofMotor Vehicles, 543 A.2d 1307 (R.I. 1988); § 45-24-69(d)(5).
However, like administrative agencies, a zoning board's determinations of law "are not binding upon [the Court] and may be freely reviewed to determine the relevant law and its applicability to the facts presented in the record." Dep't of Envt'l Mgmt. v. Labor Rels. Bd., 799 A.2d 274,277 (R.I. 2002) (citing Carmody v. R.I. Conflict of InterestComm'n, 509 A.2d 453, 458 (R.I. 1986)); see also Pawtucket TransferOperations, LLC v. City of Pawtucket, 944 A.2d 855, 858 (R.I. 2008). Accordingly, "[a]lthough factual findings . . . are afforded great deference, a dispute involving statutory interpretation is a question of law to which [the Court] appl[ies] de *Page 7 novo review." Rossi v. Employees' Retirement Sys. of the State of RhodeIsland, 895 A.2d 106, 110 (R.I. 2006) (citing In re Advisory Opinion tothe Governor, 732 A.2d 55, 60 (R.I. 1999)).
It is axiomatic that "rules of statutory construction apply equally to the construction of an ordinance." Pawtucket Transfer Operations,LLC, No. 2006-272-M.P., slip op. at 6 (quoting Mongony v.Bevilacqua, 432 A.2d 661, 663 (R.I. 1981)). Accordingly, the "clear and unambiguous language in an ordinance [is accorded] its plain and ordinary meaning." Id. However,
 "when the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency, or board, charged with its enforcement is entitled to weight and deference, as long as that construction is not clearly erroneous or unauthorized. This is true even when other reasonable constructions of the statute are possible. Id. (internal citation and footnote omitted).
Nevertheless, it must be remembered that "this Court `will not construe a statute to achieve meaningless or absurd results.'" Tidewater Realty,LLC v. State, 942 A.2d 986, 992 (R.I. 2008) (quoting Beaudoin v.Petit, 122 R.I. 469, 476, 409 A.2d 536, 540 (1979)).
 III Analysis
The Appellant contends that the substantial evidence in the record supports the conclusion that the denial of its Application amounts to a hardship which is more than a mere inconvenience, and that a literal enforcement of the Ordinance would "effectively preclude Appellant from building a home on its property." The Appellant additionally contends that the Board failed to make the requisite findings of fact, but that remand is unnecessary because the substantial evidence in the record supports reversal of the Board's Decision. The Board counters *Page 8 
that the Appellant's lots had merged by operation of law, and that the merger doctrine prohibits the Board from unmerging the lots into two non-conforming parcels.
In Sciacca v. Caruso, 769 A.2d 578 (R.I. 2001), our Supreme Court cautioned zoning boards and their attorneys to ensure that zoning board decisions on variance applications address the evidence in the record, and determine whether that evidence either meets or fails tosatisfy each of the legal preconditions set forth in § 45-24-41 (c) and (d). See Sciacca, 769 A.2d at 585. The Court then noted that such a specification of evidence in the decision would greatly aid the Superior Court in undertaking any requested review of zoning board decisions.Id.
It is axiomatic that "[a] dimensional or area variance — also known as a `deviation' — provides relief from one or more of the dimensional restrictions that govern a permitted use of a lot of land, such as area, height, or setback restrictions." Sciacca v. Caruso, 769 A.2d at 582
n. 5. The applicable statute is § 45-24-41, and it provides in pertinent part:
 "(c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary."
Furthermore,
 "in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not *Page 9 
granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief." Section 45-24-41(d)(2).
Accordingly, "for an applicant to obtain a dimensional variance (also known as a deviation), the landowner needed to show only an adverse impact that amounted to more than a mere inconvenience."Lischio, 818 A.2d at 691; see also Section 45-24-41(d)(2). The term "more than a mere inconvenience" is defined as "meaning that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." Sciacca, 769 A.2d at 583. The Rhode Island Supreme Court has suggested that this definition means "that if a property owner can enjoy a legally permitted beneficial use of the property without the proposed variance — as a reasonable alternative to doing so with the proposed variance — then the application for a dimensional variance should be denied." Id.
Furthermore, any hardship may not be "the result of any prior action of the applicant." Section 45-24-41(c)(2). A self-created hardship label "seems to be most properly employed where one acts in violation of an ordinance and then applies for a variance to relieve the illegality."Id. at 584 (quoting 7 Patrick J. Rohan, Zoning and Land UseControls § 43.02[6] at 43-66 (1998)).
Under the self-imposed hardship rule, "[a]n area variance may not be granted to solve the problem of an applicant who subdivided his land and . . . who wishes to subdivide a lot to create both a standard and a substandard lot. . . ." Rozes v. Smith, 120 R.I. 515, 521, 388 A.2d 816,820 (1978) (quoting 3 Anderson, American Law of Zoning, § 18.57 at 299-300 (2d ed. 1977)); see also Sciacca, 769 A.2d at 583 (holding that "a variance may not be granted to the owner of a substandard lot where such lot was created by the deliberate conduct of the applicant . . . An area variance may not be granted to solve the problem of an applicant . . . who proposed to divide *Page 10 
[her] property into two substandard parcels").
The power of zoning boards to award variances "was never intended as a method of sanctioning conditions which do not conform because such conditions were brought about by a landowner subsequent to the adoption of zoning regulations." Rozes, 120 R.I. at 522, 388 A.2d at 820. Furthermore, in situations where "an applicant requires both planning board approval and a variance from a local zoning ordinance to use his or her property in a certain manner, any planning board decision in favor of the applicant is conditional in nature and therefore does not relieve the zoning board from taking into account the self-created hardship language of § 45-24-41(c)." Sciacca, 769 A.2d at 584 n. 9.
In its Decision, the Board made various findings of fact and then concluded as follows:
 "two members of the Board found that no evidence was offered to satisfy them that the hardship from which the applicant seeks relief, is due to the unique characteristics of the subject land and no evidence was offered to satisfy them that the alleged hardship does not primarily result from the desire of the applicant to realize greater financial gain, and further believed that the granting of the requested variance will lead to problems including, but not limited to, an overcrowding of the subject property, and that the relief requested is not the least relief necessary and would result in an over intensive use of the subject property and also that the hardship suffered, by the applicants, and owner of the subject property, if the requested dimensional variance is not granted does not amount to more than a mere inconvenience, since evidence has not been shown that the requested relief is reasonable [sic] necessary for the full enjoyment of the applicant's permitted use, and that the applicants did not meet the requirements of the Zoning Code, Section 17.92.010 Variance, and should be also denied the requested incidental relief, which pertains to Substandard lots of record, Section 17.88.010."
In the instant matter, the Appellant asserts that the Board failed to state its grounds for denying the Application; however, two of the Board members repeatedly found that the Appellant had failed to present the requisite evidence to prove that it had satisfied its burden for *Page 11 
dimensional variance relief. After reviewing the record, this Court concludes that these Board members did not err.
Assuming that the Board accepted the Planning Board's findings in their entirety, namely, that the proposal "does not alter the general character of the surrounding area, and will not impair the general intent or purpose of the Zoning Ordinance[,]" the Planning Board's recommended approval of the proposal was subject to the Appellant sustaining its burden with respect to the additional requirements of § 45-24-41. Accordingly, the Appellant was required to prove that denial of Application would cause it to suffer a hardship as a result of the unique characteristics of the property, and not as a result of its prior actions or its desire to realize financial gain. See Section45-24-41(c)(1) and (2). It also had the burden of proving that the requested relief was the least relief necessary. See Section45-24-41(c)(4). After reviewing the record, this Court finds that the Appellant failed to sustain these burdens of proof.
The record reveals that the Appellant presented no expert testimony, traffic studies, or any other kinds of studies in favor of the Application. With respect to the issue of hardship, Mr. Rego was asked whether denial of the Application would amount to more than a mere inconvenience. Tr. I at 8. His answer was a one-worded "Yes."Id. Mr. Rego then was asked to explain why a denial would amount to more than a mere inconvenience. Id. In response he simply stated: "The lot would be useless to me at that point." Id. When later asked whether he felt a denial of the Application would leave him with no reasonable use of the property, Mr. Rego responded "That is correct." Tr. II at 8. At no point did Mr. Rego address the issues of whether the alleged hardship was not the result of the Appellant's prior actions or its desire to realize financial gain. Additionally, he did not attempt to demonstrate that the hardship was the least relief necessary. *Page 12 
Considering that the Appellant failed to proffer little, if any, evidence in support of its allegation of hardship, the Court concludes that the Board did not err in denying the Application for a variance. Indeed, the evidence in the record tends to show that by attempting to create two substandard lots, any hardship that the Appellant may suffer as a result of the denial of its Application was self-induced and motivated by profit. Furthermore, because the granting of the Application necessarily would have created two substandard lots, had the Board granted the Application, it would have done so in derogation of law.
Section 17.88.010(B) of the Ordinance provides in pertinent part:
 "If two or more contiguous substandard lots of record are owned by the same person as of January 1, 1966, such lots shall be considered to be combined to form as many conforming lots as are permitted in the particular district for the purpose of this chapter; and no single lot or portion thereof shall be used in violation of the requirements of Section 17.20.110 as to lot width, depth and area; provided, however, that in a block that is seventy-five (75) percent or more developed in A-6, B-1 and B-2 zones, lots having an area of at least four thousand (4,000) square feet and having an area and frontage equal to or greater than the average of those developed parcels within two hundred (200) feet of the lot which are on the same side of the street need not be so combined. No parcel, tract or lots of land contiguous to each other and owned by the same person shall be subdivided in a manner where the lot width, depth or area of any resulting lot shall be less than the requirements fixed by this chapter." (Emphasis added.)
It is well-settled that the scope of nonconforming uses should be strictly construed because they are viewed "as detrimental to a zoning scheme, and the overriding public policy of zoning . . . is aimed at their reasonable restriction and eventual elimination." Town of Richmondv. Wawaloam Reservation, Inc., 850 A.2d 924, 934-35 (R.I. 2004). Accordingly, "[m]erger generally requires the combination of two or more contiguous lots of substandard size that are held in common ownership in order to meet the minimum-square-footage requirements of a particular zoned district." R.J.E.P. Assocs. v. Hellewell, 560 A.2d 353, 355
(1989). *Page 13 
Furthermore, "[s]ubstandard contiguous lots cannot be developed as individual nonconforming lots unless the landowner applies for a variance or an exception." Id. However, where a "landowner owns any adjacent lots that, if combined, would satisfy the square-footage requirements, then the landowner is not entitled to the exception."Id. at 356. As a result, "[t]he landowner therefore must merge the lots to form a single parcel of land that will meet the area requirements."Id.
The record reveals that the two lots at issue in this appeal both were transferred by a single deed to Mr. Rego on May 31, 2006. See Executor'sDeed. From June 29, 1940 to the present, both lots have not had separate ownership and both lots have been recorded on a single deed. Consequently, in view of the fact that the subject lots are nonconforming, Section 17.88.010(B) automatically merged the lots by operation of law. Indeed, at the hearing, Mr. Rego admitted that the purpose of the Application was "to create two substandard legal, nonconforming lots of record. . . ." Tr. II at 5.
This Court is satisfied that the lots are substandard contiguous lots that merged by operation of law. This Court is further satisfied that even if such lots could be unmerged, the Appellant failed to fulfill its burden of proving that a literal application of the Zoning Ordinance would cause a hardship amounting to more than a mere inconvenience. Simply stating that "[t]he lot would be useless to me at that point" does not rise to the level of proving hardship amounting to more than a mere inconvenience. Furthermore, the Appellant failed to submit evidence demonstrating that the Application was not self-induced or motivated by profit. Consequently, the Board did not err in rejecting the Appellant's Application. *Page 14 
 IV Conclusion
After a review of the entire record, this Court concludes that the Board's denial of the Application was supported by reliable, probative, substantial, and legally competent evidence and was not in violation of regulation or ordinance provisions. The Board's decision also was not affected by error of law and was not characterized by an abuse of discretion. Substantial rights of the Appellant have not been prejudiced. Accordingly, this Court upholds the Board's decision.
Counsel shall submit an appropriate order consistent with this opinion.
[1] The Court observes that although a hearing was conducted on September 13, 2006, the transcript incorrectly records the date as September 13, 2007.
[2] Section 45-24-57(2)(iii) provides:
 "The concurring vote of four (4) of the five (5) members of the zoning board of review sitting at a hearing are required to decide in favor of an applicant on any matter within the discretion of the board upon which it is required to pass under the ordinance, including variances and special-use permits." *Page 1